CASE 38—PETITION FOR MANDAMUS.—OCTOBER 31.

`98  211|`
`e118 917|`

# Bryant v. Brown, &c.

### APPEAL FROM FRANKLIN CIRCUIT COURT.

PAY OF STATE GUARD.—Members of the State Guard, when ordered into "active service" for military instruction in camp, are not in "active service" in the sense in which that term is used in section 36 of the act of 1878, and are, therefore, not entitled to pay for their services out of the State Treasury. Whether they shall be paid out of the military fund is a matter left by the statute entirely to the discretion of the Governor, as to which he can not be controlled by the courts.

Whether mandamus would lie to compel the Governor or Adjutant-General to certify for payment the plaintiff's claim if it were the duty of either to do so is not necessary to be determined.

WM. H. HOLT and CARROLL & HAGAN for appellant.

1. While engaged in the camp of instruction appellant was in active service and was entitled to the sum of two dollars and fifty cents for each and every day he was so engaged in such service, that being the amount fixed by the statute. (Gen. Stats., chap. 76, sec. 7, p. 959; *Idem.*, sec. 36, p. 955.)

The change in the law made by section 2709 of the Kentucky Statutes shows the law before to have been as appellant contends.

2. Mandamus lies to compel the Governor to perform a ministerial duty. (2 Dillon on Municipal Corporations, (4th ed.), sec. 834; 14 Am. & Eng. Enc. of Law, p. 143; Moses on Mandamus, p. 82; Marbury v. Madison, 1 Cranch, 137; Poindexter v. Greenhow, 114 U. S., 270; Noble v. Union River Logging Co. R., 147 U. S., 165; Redfield v. Windom, 137 U. S., 636; Board of Liquidation v. McComb, 92 U. S., 531; Mugler v. Kansas, 123 U. S., 623; Dunlap v. Black, 128 U. S., 41; Kendall v. U. S., 12 Pet., 524; United States v. Guthrie, 17 How., 284; Decatur v. Paulding, 14 Pet., 497; Jones v. United States, 137 U. S., 202; Brashear v. Mason, 6 How., 92; Goodrich v. Guthrie, 17 How., 284; *Ex Parte* De Groot, 6 Wall., 497; Georgia v. Stanton, 6 Wall., 50; Gains v. Thompson, 7 Wall., 347; United States v. Seaman, 17 How., 225; *Ex Parte* Bradstreet, 7 Pet., 634; Harrington v. Holler, 111 U. S., 796; Reeside v. Walker, 11 How., 272; United States v. Schurz, 102 U. S., 378; Butterworth v. Hoe, 112 U. S., 50; Courts and their Jurisdiction (Works), p. 616; Maxwell's Pleadings and Practice, p. 735; Story on the Constitution, sec. 517, &c.; State v. Chase, 5 Ohio St., 528; Harpending v. Haight, 39 Cal., 189; Middleton v. Low, 30 Cal., 596; Tennessee R. Co. v. Moore. 36 Ala., 371; Wright v. Nelson, 6 Ind., 496; Baker v. Kirk, 33 Ind., 517; Gray v. State, 72 Ind., 567; Magruder v. Swan, 25 Md., 173; Groome v. Gwin, 43 Md., 572; Chamberlin v. Sibley, 4 Minn., 309; Martin v. Ingham, 38 Kan., 641; Chumasero v. Potts, 2 Mont., 242; Wall v. Blasdel, 4 Nev., 241; Cotton v. Ellis, 7 Jones (N. C.) Law, 545; State v. Doyle, 40 Wis., 175; Bonner v. Pitts, 7 Ga., 473; Pacific R. Co. v. the Governor, 23 Mo., 353; State v. Thayer, 31 Neb., 82; Bryan v. Cattell, 15 Ia., 538; State v. Nicholls, 42 La. Ann., 209; Ecuyer v. Burke, 37 La. Ann., 969; Greenwood Cemetery Land Co. v. Routt, 17 Col., 156; Mott v. Pennsylvania R. Co., 30 Pa. St., 33; Southerland v. the Governor, 29 Mich., 320.)

3. The duty which it is sought in this case to compel the Governor to perform is a ministerial duty. (Martin v. Ingham, 38 Kan., 641; Mechem on Public Officers, 955, 956; Moses on Mandamus, p. 82, 85, 86.)

THOMAS H. HINES FOR APPELLEES.

1. The law does not allow pay to an officer of the State Guard when in attendance upon drill or in camp of instruction. (Gen. Stat., chap. 76, secs. 29, 36; *Idem.*, sec., 2, p., 958; edition of 1888.)

2. Mandamus will not lie against the Governor to compel him to perform any duty whether executive or ministerial. (People v. Bissell, 19 Ill., 230; Hawkins v. the Governor, 1 Ark., 236; Turnpike Co. v. Brown, 8 Baxter, 490; Manson v. Smith, 8 R. I., 220; Rice v. Austin, 19 Minn., 104; Sutherland v. Governor, 29 Mich., 321; Louisiana v. Warmoth, Governor, 22 La. Ann., 1; Marbury v. Madison, 1 Cranch, 169.)

I. M. QUIGLEY ON SAME SIDE.

1. Appellant while in camp during the summer of 1891 was not in "active service" within the meaning of section 36 of chapter 76 of General Statutes.

2. The weight of authority seems to be that mandamus will not lie to control the Governor in the discharge of his ordinary official duties, nor to compel him to perform any act over which he has the right to exercise his judgment or discretion. And as the right of appellant is at least doubtful, and the matter at issue, under the law, is wholly within the discretion of the Governor, the writ should not be granted. (Moses on Mandamus, p. 80; Low v. Towns, 8 Ga., 360; People v. Bissell, 19 Ill., 229; Wood on Mandamus, p. 120; 14 Am. & Eng. Enc. of Law, p. 143; Miles v. Bradford, 22 Md., 170; 61 Miss., 102; 48 Am. Rep., 76.)

JUDGE HAZELRIGG DELIVERED THE OPINION OF THE COURT.

The appellant was captain of Company E, Second Regiment, Kentucky State Guard, and as such, with others, was ordered by the governor of the State into a camp of instruction, to last for two weeks, beginning in the latter part of August, 1891. He complied with the order, and contending that he was entitled to pay whilst performing such service, he brought this suit in the Franklin Circuit Court to compel the governor and adjutant-general to certify his claim to the auditor for payment, alleging that these officials had refused to so certify, although required to do so by law.

Upon demurrer his petition was dismissed, and the chief question involved on his appeal here, and from our point of view the only one necessary to be determined, is, did the statutes in force at the time of the service entitle him to pay therefor?

The whole law on the subject is found in the Acts of April 8, 1878, and the amendment thereto of May 5, 1880 (General Statutes, pages 943 to 959, B. & F. edition, 1888), and, so far as it affects the question, is as follows:

"Section 35 (Act of 1878). There is hereby appropriated the sum of ten thousand dollars ($10,000) per annum, to be paid out of the treasury, from the resources of the Kentucky war claim, as the same shall hereafter be collected from the United States, which, together with all sums received into the treasury from fines, etc., under this act shall constitute the military fund of this State. Said fund shall be disbursed, from time to time, by the authority of the governor, and under such regulations as he shall prescribe for the organization, administration, equipping, uniforming and paying the State guard, for the purchase of tactics, laws and regulations of the army of the United States and instruction of the State guard, for the renting of armories and for the purchase of such camp and garrison equipage and military stores as may be necessary to the State troops.

"Section 36. Whenever, in the judgment of the governor of this Commonwealth, any actual or threatened invasion, domestic violence, or other great public danger, makes it necessary to render military aid to the civil power of the government for the enforcement of law, the preservation of peace, and the security of the rights, lives or property of citizens, he may order into active service so much of the State guard as he may deem necessary, and may employ

them anywhere in this Commonwealth.   The foregoing pro-
vision (section 8) of this law, relating to the subordination of
the reserve militia to the civil power when called into active
service, shall apply with equal force to the State guard
when employed in active service.   When employed in active
service commissioned officers of the State guard shall receive
two and a half dollars   *   *   per day, the same to be paid
out of the treasury on the warrant of the auditor of public
accounts, upon company pay rolls,   *   *   certified by the
adjutant-general and approved by the governor by his own
signature."   *   *

"Section 7 (October, 1880).   The governor may order any
part of the State guard into active service, for not exceeding
a period of two weeks in any one year, for the purpose of
military instruction in camp."

The appellant contends that while he was in the "camp of
instruction" he was in "active service" under the express
provisions of section 7, and, being employed in such service,
he was entitled to $2.50 per day, according to the provisions
of the latter part of section 36.

It is admitted by his counsel that the only "active service"
which entitles militiamen to be paid out of the State treas-
ury proper is service performed when called out to meet
actual or threatened invasion, suppress domestic violence,
etc., but it is said that when serving in a camp of instruction
he is to be paid out of the military fund under the provisions
of section 35, and not out of the treasury or State revenue.
We confess we are not able to appreciate the logic of this.

If, when the soldier is called into a camp of instruction
pursuant to section 7, he is thereby to be deemed in "active
service" in the meaning of those words as used in section 36,
then he is entitled to pay just as the soldier who is called out

for the purposes named in that section, and his pay must be met in precisely the same way and out of the same fund. This is the only section where the amount of the pay is attempted to be fixed or the manner of its payment prescribed.

It is entirely clear that the "service" termed "actual" in section 36 means alone the service performed in resistance to threatened invasion or in cases of domestic violence, etc. While the soldier in camp is said to be in "actual service" under the provisions of section 7, he is not in the service meant in section 36, and that section furnishes no authority whatever for paying a militiaman to discharge camp duty. If he is entitled to pay at all for such service it must be by reason of some provision of the law wholly independent of section 36, and this provision is said to be found in section 35. Here we find a fund provided, which is to be disbursed by the authority of the governor alone, and disbursed under regulations prescribed by him for the organization, administration, equipping, uniforming and paying the State guard.

Clearly this disbursement is not regulated by any other provision of the law. The amount to be expended by the governor, if any, for the organization of the State guard, or for paying the State guard, is left wholly to him, and he alone is to prescribe the regulations under which such disbursements may be made.

It may be altogether reasonable that, although section 7, authorizing the governor to order the State guard into camp, does not provide for their pay, the governor should use this fund for such purpose, but it may seem altogether otherwise than reasonable to him; and, if so, that is the end of it. It is not contended that executive discretion can be directed by mandamus.

It is suggested, however, that this discretion is exercised

and its force expended when the executive calls the State guard into camp and fixes the period of its encampment; but to do this only stops short of prescribing a regulation for paying the guard—the amount to be disbursed would be left wholly undetermined.  We can not go to section 36 to fix the amount, as the pay there is for a different service, and it would be entirely arbitrary to say that the sum of $2.50 per day was the amount the executive was to prescribe for the payment of officers of the guard under the discretion given him in section 35.  And, besides, as we have seen, that pay was to come out of the State treasury proper, and not out of the military fund.

Under the law the governor is the commander-in-chief of the militia.  He is to direct how often each company, battalion and regiment shall assemble for regular drill, and when at regular drill, or any parade or review or on escort duty within or without the State, the guard shall be considered on active duty except as to pay and rations.

Section 7 confers the power on the governor to order the guard into a camp of instruction, and, as that section omits to exclude the members from pay, it is argued that an intention is thus shown to allow them pay for such service.

It seems to us, however, that the authority for the payment ought not to rest on a mere implication when it could easily have been made explicit.  It is probable that the members were not expressly excluded from pay in this section (7) as they were when at regular drill, etc. (section 2, amendment 1880), for the very reason that it was a matter already provided for in section 35, by leaving it entirely to the discretion of the governor.

We are convinced, therefore, that under the statutes it was not made the duty of the governor or the adjutant-gen-

eral to certify the claim in dispute for payment. It is unnecessary to consider the question of the appellant's right to the writ sought by him, had that statutory duty been imposed on these officers.

The demurrers were properly sustained.

Judgment affirmed.