# STATE EX REL. POOLE v. PEAKE, Adjutant General.

### (40 L.R.A.(N.S.) 354, 135 N. W. 197.)

Relator. Thos. H. Poole, as brigadier general (retired) of the National Guard of this state, was tried and convicted by a general court-martial of certain alleged felonies claimed to have been committed by him in violation of the Articles of War of the United States. The judgment and sentence of such court-martial, which dismissed him from the National Guard, were approved by the governor and commander-in-chief of the Militia, by the issuance of an order accordingly. Relator sued out a writ of certiorari in the district court of Burleigh county for the purpose of obtaining a review of such judgment and order. This appeal is from the judgment of that court, holding the judgment and order aforesaid null and void as being without and in excess of jurisdiction. *Held:*

**Court-martial — certiorari to review.**

1. That certiorari is a proper remedy to review the proceeding of a court-martial for the purpose of determining whether it exceeded its jurisdiction.

Note. — The question whether state Militias are subject to the Articles of War of the United States in times of peace has been passed upon in but few cases, as shown by a review thereof in a note appended to the report of above case in 40 L.R.A.(N.S.) 354. Such authority as there is, however, supports the rule adhered to in this case.

**Articles of War of United States — effect on state Militia in times of peace.**
2. The Articles of War of the United States do not govern the Militia or National Guard of this state in times of peace, and consequently relator was not amenable to general court-martial for the alleged violations of such Articles of War. Hence, the district court properly held that the judgment and sentence of such court-martial, and the order of the governor and commander-in-chief approving the same, were null and void because in excess of jurisdiction.

Opinion filed January 6, 1912. Rehearing denied March 23, 1912.

Appeal from district court, Burleigh county; *W. H. Winchester*, J.

Certiorari to review the proceedings. of a general court-martial. From a judgment in relator's favor, defendant appeals.

Affirmed.

*Andrew Miller*, Attorney General, *Melvin A. Hildreth*, Brigadier General National Guard (retired) Judge Advocate, for appellant.

*Engerud, Holt, & Frame*, for respondent.

FISK, J. While fully realizing that we are in no manner responsible either for the facts or the law which must control in disposing of this appeal, the duty which has been assigned the writer of giving expression to the view of the court is not a pleasant one, owing to the nature of the litigation, and more especially in view of the fact that our conclusion does not coincide with the views entertained by the chief executive of the state, as well as by prominent officers of the National Guard who were instrumental in instituting and prosecuting the proceeding before the general court-martial, hereafter mentioned, out of which proceeding this litigation arose. Although the views of these high officials of a co-ordinate branch of the state government are entitled in case of doubt to much respect and weight relative to the extent of the powers delegated to them by the Constitution and statutes, yet such views, when clearly erroneous, must be declared so by the courts, and the acts of such officials, when manifestly in excess of jurisdiction, must be adjudged null and void whenever their legality is properly challenged in court, for otherwise the court would not be discharging its constitutional duty.

The facts necessary to a full understanding of the questions involved

are correctly stated in appellant's brief, and in substance are as follows:

This cause comes to this court on appeal from a judgment of the district court of the sixth judicial district, entered on the 8th day of January, 1911, which in effect vacates and annuls the findings and sentence of a general court-martial which found the respondent, Thomas H. Poole, guilty of having violated the Military Code of this state, and dismissing him from the service of the National Guard of the state.

"The respondent was tried before a general court-martial on the 12th day of January, 1909. He was found guilty of having violated both the 21st and the 61st Articles of War, and sentenced by the court "to be dismissed from the service of the National Guard of the state of North Dakota." This sentence was approved by the governor of the state. On the 7th day of August, 1909, on application of respondent a writ of certiorari was issued, directed to Amasa P. Peake, as adjutant General of the state, requiring him to certify and transmit to the district court of the sixth judicial district a true and full record of all the proceedings of said general court-martial and the orders of the governor, and praying that all the said proceedings be declared null and void, and that the respondent be restored to his rank of a brigadier general (retired) in the North Dakota National Guard. The court made findings and an order for judgment, which adjudged and determined that "the order made and issued by Honorable John Burke, as governor and commander-in-chief of the National Guard of the state of North Dakota, on the 12th day of January, 1909, directing and ordering that a general court-martial be convened to hear and try certain charges and specifications against the relator, Thomas H. Poole, be and the same is hereby held to be null and void and without jurisdiction. And said court-martial convened and held pursuant to said order, and all its proceedings and acts, sentence, and judgment are hereby set aside and annulled; and it is further adjudged, determined, and decreed that the order of the Honorable John Burke, as governor and commander-in-chief, made March 1, 1909, approving the proceedings, findings, sentence, and judgment of said court-martial, and purporting to remove and discharge said Thomas H. Poole from the organized militia of this state, and depriving him of his rank as brigadier general on the retired list, is hereby declared null and void, and of no effect."

The assignments of error challenge the jurisdiction of the court below to inquire into the validity of the proceedings before the general court-martial or to enter the judgment appealed from. Notwithstanding the statement to the contrary in appellant's additional memorandum brief filed herein, no question was raised in that court that certiorari is not an appropriate remedy, but appellant's contention there was merely as above stated. In such additional brief, counsel assert that such question was squarely raised in the court below on the motion to quash the writ. In this, they are clearly in error. In the first place such motion and the ruling thereon are not properly before us, as no statement of the case was settled. Mooney v. Donovan, 9 N. D. 93, 81 N. W. 50.

In the second place, conceding for the sake of argument, that they are properly before us, such motion to quash did not raise such question. · The grounds of the motion are in substance as follows:

1. It appears on the face of said writ that the general court-martial complained of was legally assembled, organized, and constituted.

2. That said Thomas H. Poole was at the time a member of the National Guard of the state of North Dakota.

3. That said court-martial had jurisdiction over the person of Thomas H. Poole.

4. That said court-martial had jurisdiction over the subject-matter.

5. That said court-martial, acting within its jurisdiction, rendered judgment finding the defendant guilty as charged in the specifications.

6. That his excellency, the governor, as commander-in-chief of the National Guard, approved said judgment, and

7. That this court is without jurisdiction to inquire into, review, or question the proceedings of said court-martial or the orders of the governor and commander-in-chief in relation thereto.

It is therefore clearly apparent from the above that no question as to the correctness of the remedy invoked was made in the court below, as each ground of the motion went to the merits, and consequently appellant is not in a position to raise such question for the first time in this court. But if we could brush aside these well-settled rules of practice we would nevertheless be obliged to overrule appellant's contention, for it is entirely clear that certiorari is an appropriate writ to review the proceedings of such court-martial for the purpose of de-

termining whether it exceeds its jurisdiction. While it is no doubt true that it was not a court within the meaning of §§ 85 and 86 of our state Constitution, nor within the meaning of § 7810, Rev. Codes, it was a tribunal within the meaning of the statute aforesaid; and its acts may be inquired into through the use of such writ, not for the purpose of correcting any mere errors which may have been committed by it, but solely for the purpose of determining whether such tribunal exceeded its jurisdiction. It would be strange, indeed, if this could not be done, for otherwise great injustice might be inflicted on a person by such a tribunal while acting wholly without jurisdiction, and yet such aggrieved person might have absolutely no redress. Our attention has been called by counsel to no authority sustaining appellant's contention. The case of State ex rel. Poole v. Nuchols, 18 N. D. 237, 20 L.R.A.(N.S.) 413, 119, N. W. 632, cited by appellant, is not in point. In that case we held, it is true, that a court-martial is not an inferior court within the meaning of § 86 of the Constitution, as it belongs to the executive, and not to the judicial, department of the state; but we also there said: "Of course, if it exceeds its jurisdiction, or acts without jurisdiction, its judgments are a nullity, and any person aggrieved thereby may seek proper redress in the civil courts having jurisdiction, and such courts will furnish appropriate relief." See, in this connection, the valuable note to said case as reported in 20 L.R.A.(N.S.) 413, wherein the authorities are reviewed at length, and they will be found to support our views as above expressed. One of the leading cases is that of People ex rel. Smith v. Hoffman, 166 N. Y. 462, 54 L.R.A. 597, 60 N. E. 187, wherein that great court, speaking through Judge Vann, most thoroughly considered this point which was the sole question before it, and reached the conclusion that certiorari will lie. The appellant's contention in the case at bar is there most effectually answered, and the reasoning and conclusion of the court meet with our full approval.

This brings us to the merits, which involve the question whether the general court-martial had any jurisdiction to try the relator for the alleged offenses charged against him, and render its judgment and sentence dismissing him from the National Guard. If this question must be answered in the negative, it, of course, necessarily follows that such judgment, as well as the order made March 1, 1909, by the Gov-

crnor as commander-in-chief, approving the findings and judgment of such general court-martial, and purporting to dismiss relator as an officer in the National Guard, are nullities, and he would still retain his rank in the Guard as before.

We will now notice some of the principal contentions of the respective parties. They are widely and radically at variance and involve numerous propositions of law, but we shall consider only those which we deem controlling and decisive of the appeal. Relator's chief contention is that he was not amenable to a court-martial at all, because he was not a militiaman in active service, and there was no war or public danger. In other words he plants himself squarely on the constitutional guaranty found in § 8 of the state Constitution, and also in the 5th Amendment to the Federal Constitution. Section 8 reads: "Until otherwise provided by law, no person shall, for a felony, be proceeded against criminally, otherwise than by indictment, except in cases arising in the land or naval forces, or in the militia when in actual service in time of war or public danger. . . ." He asserts that said sections clearly forbid prosecutions of militiamen for felonies by court-martial, except when such militiamen are in actual service in time of war or public danger, and that the charge on which he was thus convicted are felonies. Also that at the time of such trial and conviction there was no law in this state authorizing a court-martial for the trial of a person charged with any crime; that the Articles of War do not govern the militiamen except while in actual service.

It is needless to detail appellant's contentions. They are squarely opposed to those of the relator. We are compelled to uphold relator's contentions, and will proceed to point out what we deem to be the basic fallacy in appellant's argument. His counsel apparently wholly ignore the radical and fundamental distinctions between the militia of the state and the regular Army and Navy of the United States, and the laws governing each. Such distinction is perfectly clear, and is recognized in both the Federal and state Constitutions as well as in the statutes. Neither of such Constitutions forbid prosecutions for felonies otherwise than by presentment or indictment in cases arising in the land and naval forces (Army and Navy) even in times of peace; but they each clearly forbid such prosecutions in cases arising in the mitilia,

except when such militia is in actual service,. in time of war or public danger. The regular Army is at all times governed by the Articles of of War, and its officers and soldiers are amenable to courts-martial for any violations thereof, as well in times of peace as in times of war. Not so, however, with the state Militia. The latter is governed thereby only while in actual service in time of war or public danger, or when expressly so provided by local state law. A moment's reflection will serve to demonstrate the wisdom of such distinction. As said by Judge Vann in People ex rel. Smith v. Hoffman, supra: "There is a wide distinction between the regular Army of the nation and the Militia of a state when not in the service of the nation, for discipline which is ample for the latter will not answer for the former. A member of the state Militia belongs to civil life, has a civil avocation, and only occasionally engages in the exercise of arms. A member of the United States Army, on the other hand, has no employment except that of a soldier, and arms constitute the business of his life. Hence, more rigid rules and a higher state of discipline are required in the one case than in the other. Moreover, the state Militia is organized by statutes of the state; and the legislature, under the limitations of the Constitution, has power to regulate the entire subject, to invest boards of examination with such authority, and to give the civil courts such power to review as it sees fit."

As we understand the position of appellant's counsel, it is that the Articles of War govern and control our state Militia in times of peace the same as they govern and control the regular Army. The charges against the relator on which he was convicted by the court-martial are based on alleged violations of the Articles of War. It is perfectly manifest to our minds that such proceedings were a nullity for the obvious reason that our legislature had not, in its wisdom, seen fit to thus ordain. The Military Code in force in this state at the time relator was tried and convicted, being chapter 21, Political Code 1905, expressly provided that "the Militia while in active service shall be governed by the military law of the state, and the rules and Articles of War of the United States" (§ 1717), but such Code will be searched in vain for any provision adopting the Articles of War for its government when not in active service, or, in other words, in time of peace; and such statute nowhere defines any military offenses punishable by court-

martial or otherwise in time of peace. But appellant's counsel quote § 1752 of the Code, which pertains to the drill, discipline, and uniform of the National Guard, and say: "By what military code are the powers and duties to be measured of an officer in the National Guard of this state? The respondent concedes that there are no military regulations of the state. The legislature, having adopted the rules and articles that govern the Armies of the United States, have therefore said in the most solemn manner that the National Guard of this state shall be governed by the same rules and regulations. Therefore if the commanding officer of the company, whether in command or not, should commit a misdemeanor or a felony, he certainly could be tried by general court-martial under the laws of this state." Right here is, in our opinion, the basic fallacy in appellant's contention. Counsel wholly misinterpret said statute. It deals merely with matters relating to drill, discipline, and uniforms, and it merely adopts the regulations of the Army, Articles of War, and acts of Congress as authority, and to govern in such matters in cases not provided by the laws of the state, etc. The word "discipline," as there used, means "system of drill," "systematic training," "training to act in accordance with established rules; accustoming to systematic and regular action." See Webster's New International Dictionary, and also 27 Cyc. 496. This is apparent, for if § 1752 be given the broad meaning contended for by appellant, it would conflict with or at least render superfluous § 1717, which provides that the Militia while in active service shall be governed by the rules and Articles of War of the United States. Furthermore, to attribute to the legislature such an intent would be absurd. No state in the Union has ever enacted such a law to our knowledge, nor could it be done in this state as to felonies without an amendment to the state Constitution, and we apprehend that the suggestion of such a thing as subjecting members of our state Militia to trial by court-martial for felonies in time of peace would shock our citizens. But counsel for appellant earnestly argue that if this court should hold that it cannot be done "the National Guard ought to disband and pile their uniforms and equipment in the public streets and set fire to them, because there would be no power whatsoever to control either officers or men, and there would be greater danger from men who could not be controlled in time of peace than there would be from men in time of war." We fear

counsel are unduly alarmed. This is, so far as we are aware, the first and only time in the entire history of this state that a resort to a court-martial was deemed necessary or advisable. Furthermore, the remedy, if one is needed, lies with the legislature, and no doubt will be furnished if applied for. In 1909 the legislature of this state enacted a new and very comprehensive Military Code (Laws 1909, chap. 165), but it did not see fit, in its wisdom, to confer on a court-martial the power to try a militiaman for a felony in time of peace. It is, however, provided by such Military Code that certain by-laws, rules, and regulations may be adopted by associations therein authorized to be formed, also rules may be adopted by the governor as commander-in-chief, and that for violations thereof enlisted men may be tried by court-martial and also expelled from the organization. Section 12 of such new Code expressly provides when the Articles of War shall be in force as governing the Militia; and it is a significant fact that such new statute limits the times in which they shall apply, to the occasions when such Militia is on duty pursuant to the orders of the governor, or when ordered to assemble for duty in time of war, insurrection, invasion, public danger, or to aid the civil authorities.

In many of the states the legislatures have seen fit to provide for the enforcement of discipline in the organized Militia by fine and imprisonment imposed by courts-martial for infractions of rules and regulations, even in times of peace. The right so to do is undoubted, but it was not exercised in this state until the new Military Code of 1909 was adopted. See in this connection 27 Cyc. 496, from which we quote: "The laws of nearly all the states have been revised with a view of conforming the organization and discipline of the organized Militia to that of the regular Army, and violations of military laws or regulations are now generally dealt with by military courts within the scope of their jurisdiction as defined by the state laws." Citing State ex rel. Madigan v. Wagener, 74 Minn. 518, 42 L.R.A. 749, 73 Am. St. Rep. 369, 77 N. W. 424. The case of State ex rel. Madigan v. Wagener, supra, seems to be a leading authority, and we commend the opinion of Judge Mitchell as a clear and sound statement of the law. The opinion recognizes the right of the state legislature, within constitutional restrictions, to provide certain rules and regulations for the government of the organized Militia, and, as disciplinary measures, to au-

22 N. D.—30.

thorize courts-martial to impose fines and imprisonment for violations thereof, and it is therein stated that in many, if not most, of the states, this has been done.

It goes without saying that courts-martial are courts of special and limited jurisdiction, and that they possess no powers not expressly conferred on them. 27 Cyc. 498; 22 Ops. Atty. Gen. 137; Dynes v. Hoover, 20 How. 65, 15 L. ed. 838; Deming v. McClaughry, 51 C. C. A. 349, 113 Fed. 639.

That the terms "actual service" and "active service," as used in the Constitution and Military Code, mean service in time of war or public danger, etc., is clear. It is likewise clear that the words "when in actual service in time of war or public danger," in § 8 of our Constitution, apply to the Militia only. Johnson v. Sayre, 158 U S. 109, 39 L. ed. 914, 15 Sup. Ct. Rep. 773. That the words "actual service" and "active service" are used in such restrictive sense in our Military Code is entirely clear from a reading of §§ 1716, 1761, 1762, 1774. See also State v. Josephson, 120 La. 433, 45 So. 381, and Bryant v. Brown, 98 Ky. 211, 32 S. W. 741. It must necessarily follow, therefore, that, being in time of peace, the Articles of War in no manner governed the militiamen, and consequently Brigadier General Poole (retired) could not be tried for alleged violations thereof.

Entertaining the above views, it becomes unnecessary to notice the other points in controversy. We conclude, therefore, that the judgment appealed from, in so far as it adjudges that the orders therein enumerated, as well as the acts and judgment of such court-martial, are null and void, must be affirmed.

SPALDING, Ch. J. I concur fully in the opinion of my associate covered by paragraph 1 of the syllabus; and while I concur in the opinion that the court-martial in question was without jurisdiction, I reach my conclusion by a method differing from that pursued by my associates, and cannot concur in all that is said in the majority opinion.

I prefer to confine my conclusions as to the jurisdiction of the court-martial to the case before us, viz., its jurisdiction over a retired officer not on duty of any kind. The relator has been retired by operation of law, under provisions of the Code of this state. A retired officer of our Militia bears a relation to the organized Militia differing ma-

terially from that borne by a retired Army officer to the regular Army. The latter is made, by statute, subject to trial by court-martial. U. S. Rev. Stat. § 1256, U. S. Comp. Stat. 1901, p. 888. A retired militiaman is not made subject to trial by such court, and the character of his position as fixed by our Code renders it inappropriate that he should be subject to court-martial, at least when not on detail by order of the governor.

Relator was not on any kind of duty, and the decision need go no farther than to cover the case of such an officer. I rest my concurrence on the ground that an officer retired by operation of law is not subject to be tried by court-martial when not on duty under detail by order of the governor. I express no opinion farther than this.

### On Petition for Rehearing.

Fisk, J. We have carefully considered the petition for a rehearing filed by appellant, and find nothing therein to cause us to change our views as above expressed.

In denying such petition we deem it advisable to briefly notice some of the principal contentions made in such petition. It is manifest that appellant's counsel are laboring under a misapprehension regarding the court's holding, for they start the petition with the following assertion: "The decision of the court proceeds upon the theory that the Militia of a state can only be subject to trial by court-martial when they are in the actual service of state or nation." This is very far from the fact, for the exact contrary is true. We held that the Articles of War do not govern the state Militia in times of peace, for the legislature has not thus ordained, and consequently the officers and members of such Militia are not subject to court-martial in time of peace for alleged violations of such Articles of War. But we distinctly said that the power of the legislature to provide for the enforcement of discipline in the organized Militia by fine and imprisonment imposed by courts-martial for infractions of rules and regulations, even in times of peace, is undoubted.

Counsel in their petition again call our attention to §§ 188 to 193 of our state Constitution, and insist that we have overlooked the same. In this they are again mistaken. There is no room for doubt that

"all able-bodied male persons residing in the state, between the ages of eighteen and forty five years," with certain exceptions, constitute the Militia of the state; nor is there any room for doubt that the organized Militia or National Guard constitutes the "Active Militia." But the terms "Active Militia," and "the Militia when in actual service in time of war or public danger," are entirely distinct and of different meaning, and the basic fallacy in counsel's contention apparent is their failure to distinguish the difference between these terms. Section 8 of our Constitution, which provides that no person shall for a felony be proceeded against criminally otherwise than by indictment, does not except from its provisions the active Militia in time of peace, but it excepts "the Militia when in actual service in time of war or public danger." No doubt the framers of the Constitution contemplated that the legislature would prescribe rules and regulations for the government of the organized or active Militia in time of peace as well as when called into active service for the state in time of public danger, etc., for § 192 clearly contemplates that there may be trials by courts-martial, but it is perfectly manifest that until such time as the legislature has made provisions therefor no such trials could be had. Our attention is called to § 1753, Rev. Codes, which makes certain acts a misdemeanor, and concludes with the statement, "And upon conviction shall be fined in a sum not less than $50 nor more than $100, or may be cashiered." This section is somewhat vague, but conceding all that is claimed for it by appellant's counsel, the most that can be said is that in cases falling within the provisions of said section, members of the Militia may be court-martialed; but this does not aid appellant in this case, for respondent is not charged with a violation of said section, but is, as we have seen, charged with a violation of the 21st and 61st Articles of War.

Our attention is called in the petition to the fact that in three instances during statehood, prosecutions by court-martial have taken place in this state; but this fact is in no manner controlling, nor does it operate in the least to change our views of the law as above expressed.

Counsel evidently do not understand the decision in State ex rel. Poole v. Nuchols, for they criticize the special concurring opinion of the chief justice in the case at bar, and assert that it is contrary to the holding in that case. In this counsel are grievously in error. We did not

hold in the Nuchols Case that the court-martial had jurisdiction, but we held merely that no power has been conferred by the Constitution on the supreme court to issue the writ of prohibition in a case like that, and that the relators therein should seek relief, if at all, in the proper court.  See opinion in 18 N. D. 233, 20 L.R.A.(N.S.) 413, 119 N. W. 632.

The petition is denied.