338 P.2d 1051

**STATE of New Mexico ex rel. Charles G. SAGE and Armando G. Nasci, Relators,**

v.

**Honorable Samuel Z. MONTOYA, Judge of the First Judicial District of the State of New Mexico, substituting the Honorable David W. Carmody, no longer a District Judge of said Judicial District, Respondent.**

No. 6474.

Supreme Court of New Mexico.

March 23, 1959.

Rehearing Denied May 25, 1959.

Bigbee & Stephenson, Matias A. Zamora, Santa Fe, for relators.

Fred M. Standley, Atty. Gen., Fred M. Calkins, Jr., and Alfred P. Whittaker, Ass't Attys. Gen., for respondent.

LUJAN, Chief Justice.

This is an original proceeding for a writ of prohibition by relators against the District Court of the First Judicial District, Santa Fe County, and the Honorable David W. Carmody, formerly district judge therein.

On March 29, 1958, certain indictments were returned against each of the relators which read as follows:

"1. State of New Mexico v. Charles G. Sage, No. 6822: The Grand Jurors of the County of Santa Fe accuse the defendant, Charles G. Sage, of the following crimes:

"*Count I:* Of violation of Section 40–21–1, N.M.S.A., 1953 Compilation, in that the said defendant did designedly, by false pretense, and with intent to defraud, obtain from the State of New Mexico money in excess of $20.-00, and charges that said act occurred on or about the 6th day of October, 1955, in Santa Fe County.

"*Count II:* Of violation of Section 40–8–12, N.M.S.A., 1953 Compilation, in that the said Charles G. Sage did make payment or cause to be made payment from public money where such payment purported to be for wages, salaries or other return for personal services, and where such personal services were not, in fact, rendered, and where such payments did not cover lawful vacation periods or absences from employment because of sickness, and charges that said act occurred on October 4, 5, 6 and 7, 1955 in Santa Fe County, New Mexico.

"*Count III:* Of violation of Section 11–2–38, N.M.S.A., 1953 Compilation, in that the said Charles G. Sage, being a public officer or employee having in his custody or under his control public moneys, did use or permit the use of such moneys for a purpose not authorized by law, and charge that said act occurred October 1, 1955 in Santa Fe County, New Mexico."

"2. State of New Mexico v. Armando G. Nasci, Cause No. 6816:

"The Grand Jurors of Santa Fe County accuse the defendant Armando G. Nasci, of violation of Section 40–32–2, N.M.S.A., 1953 Compilation, in that the said Armando G. Nasci, being a person of whom an oath was required by law, did swear falsely regarding a matter or thing respecting which such oath was required by testifying falsely before the Grand Jury of Santa Fe County, New Mexico that he, the said Armando G. Nasci, had not written the name of George F. Tunnard, Jr., on a reimbursement voucher, and charge that said act occurred on March 12, 1958, in Santa Fe County, New Mexico."

"3. State of New Mexico v. Armando G. Nasci, No. 6817:

"The Grand Jurors of the County of Santa Fe accuse the defendant, Armando G. Nasci, of violation of Section 40–21–1, N.M.S.A., 1953 Compilation, in that the said Armando G. Nasci did designedly, by false pretense, and with intent to defraud obtain money from the State of New Mexico in excess of $20.00, and charge that said act occurred on or about the 12th day of September, 1956, in the County of Santa Fe, State of New Mexico."

On April 24, 1958, the relators filed motions to quash the indictments on the ground, among others, that the grand jury was without power, authority or jurisdiction to return the indictments, and that the court lacked jurisdiction to determine the issues raised in said indictments.

On August 5, 1958, the court entered its order denying the motions to quash. Thereupon relators sought and obtained an alternative writ of prohibition against the respondent, the Honorable David W. Carmody, then district judge of the First Judicial District, restraining him from proceeding in criminal causes 6822, 6816 and 6817 until further order of this court. Relators now seek to have this alternative writ of prohibition made permanent and absolute.

It appears from the affidavits executed on April 23, 1958, by Glenn Lovett, the then adjutant in the office of the Adjutant General of the State of New Mexico, that relators were, at all material times, members and officers of the National Guard of New Mexico and in active state service for administrative duty with the Adjutant General's Department. It further appears that the military authorities have not waived any jurisdiction which they may have over the matters charged in the indictments.

Both parties recognize that the crimes charged are expressly made felonies by statute. Both also recognize that relators were called into active state service for administrative duty with the New Mexico Adjutant General's Office pursuant to Section 9–2–4, NMSA, 1953 Compilation.

The question presented is whether the alleged felonious acts of relators, as members of the National Guard in active state service for administrative duty, constitute crimes for which relators can be tried in the civil courts, or whether the felonious acts charged are within the exclusive jurisdiction of the military courts.

Under the provisions of Section 40–21–1, 40–8–12, 40–32–2, and 11–2–38, NMSA, 1953 Compilation the acts charged are civil offenses. Under the provisions of Section 9–5–5, NMSA, 1953 Compilation these same acts are military offenses.

Relators contend that they cannot be tried in the civil courts for the acts charged and that the military courts have exclusive jurisdiction over the matters charged in the indictments.

We cannot accept this theory. Section 14, Article II of the New Mexico Constitution provides in pertinent part as follows:

"No person shall be held to answer for a capital, *felonious* or infamous crime unless on a presentment or indictment of a grand jury or information filed by a district attorney or attorney general or their deputies, *except in cases arising in the militia when in actual service in time of war or public danger* * * *". (Emphasis added.)

The above-quoted constitutional provision is clear and unambiguous. Hence it is not subject to interpretation or construction by this court. Weiser v. Albuquerque Oil and Gasoline Co., 64 N.M. 137, 325 P.2d 720.

No war or state of public danger existed during the period in which the alleged felonious acts occurred and we will take judicial notice of this fact. Johnson v. Biddle, 8 Cir., 12 F.2d 366. Such being the case, a military court would be wholly without jurisdiction to try relators for the felonies with which they are charged. Clearly then the civil courts *must* have jurisdiction to try relators for the alleged violations of Sections 40–21–1, 40–8–12, 40–32–2 and 11–2–38, supra.

In the case of State ex rel. v. Peake, 22 N.D. 457, 135 N.W. 197, 40 L.R.A.,N.S., 354, relator, a Brigadier General (retired) of the National Guard of North Dakota was tried and convicted by a military court of certain offenses, presumably felonies, claimed to have been committed by him in violation of the Articles of War. Upon court review, relator urged that he could not be tried by a military court since he was not in actual service in time of war or public danger. In upholding this contention the court stated as follows, 135 N.W. at page 200:

"In other words, he plants himself squarely on the constitutional guaranty found in section 8 of the state Constitution, and also in the fifth, amendment to the federal Constitution. Section 8 reads: 'Until otherwise provided by law, no person shall, for a felony, be proceeded against criminally, otherwise than by indictment, except in cases arising in the land or naval forces, or in the militia when in actual service in time of war or public danger. * *' He asserts that said sections clearly forbid prosecutions of militiamen for felonies by court-martial, except when such militiamen are in actual service in time of war or public danger, and that the charges on which he was thus convicted are felonies * * *

" * * * Neither of such Constitutions forbids prosecutions for felonies otherwise than by presentment or indictment in cases arising in the land

and naval forces (army and navy) even in times of peace; but they each clearly forbid such prosecutions in cases arising in the militia, except when such militia is in actual service, in time of war or public danger."

Since the relator was not in actual service in time of war or public danger, the North Dakota court held that the conviction by a military court was null and void.

It is true that the court in the Peake case made the following statement and others in a similar vein:

"In 1909 the Legislature of this state enacted a new and very comprehensive military code * * *; but it did not see fit, in its wisdom, to confer on a court-martial the power to try a militiaman for a felony in time of peace."

These statements do not aid relators in the instant case because Section 8 of the North Dakota Constitution, providing that one accused of a felony must be proceeded against by indictment except militiamen in actual service in time of war or public danger, contains the proviso *"Until otherwise provided by law."*

Section 14, Article II of the New Mexico Constitution contains no such qualifying provision. Thus the New Mexico legislature is powerless to change the constitutional proscription against a militiaman being tried for a felony before a military court unless he is in actual service *in time of war or public danger.*

In this connection, Section 9–4–2, NMSA, 1953 Compilation provides that "Members of the New Mexico national guard, ordered into *active service* of the state by any proper authority shall not be liable in any court of this state, either civilly or criminally, for any acts done by them in performance of their duty." In order to uphold the constitutionality of this statute, which incidentally must be read in conjunction with Section 9–5–5, supra, creating certain military offenses, the words "active service" must be interpreted as meaning service in time of war or public danger. State ex rel. v. Peake, supra; State v. Josephson, 120 La. 433, 45 So. 381. Further, we believe this interpretation to be the only reasonable one. The hostility of the American people to any interference by the military with the regular administration of justice in the civil courts is well known. Bishop v. Vandercook, 228 Mich. 299, 200 N.W. 278. The supremacy of the civil power is a fundamental principle of Anglo-American jurisprudence. Allen v. Gardner, 182 N.C. 425, 109 S.E. 260. "The military shall always be in strict subordination to the civil power." Section 9, Article II, New Mexico Constitution.

Section 2, Article 18 of the New Mexico Constitution provides as follows:

"The legislature shall provide for the organization, discipline and equipment of the militia, which shall conform

as nearly as practicable to the organization, discipline and equipment of the regular army of the United States, and shall provide for the maintenance thereof."

Relators urge that this provision impliedly empowers the New Mexico legislature to enact and publish rules and regulations for government of the militia, to create and establish offenses, and to provide punishments for their infractions by the imposition of fines and imprisonments by military courts.

 Speaking generally we agree with this position. But the above-quoted Section does not authorize the legislature to provide that a militiaman can be tried for a felony by court martial or military court when no state of war or public danger exists. To hold that Section 2, Article 18, did so authorize would cause it to be in conflict with Section 14, Article II of the New Mexico Constitution, or would at least render the latter Section superfluous. State ex rel. v. Peake, supra.

Relator's Point II is as follows:

"Since the acts and matters investigated by the grand jury were within the exclusive jurisdiction and cognizance of the military courts, the grand jury was without power, authority and jurisdiction to investigate and inquire into the subject matter with respect to which the false statement was al-

legedly made and the statement, if made, was not perjury within the contemplation of Section 40–32–2, N.M. S.A., 1953 Compilation."

 In this case the grand jury was called to conduct an investigation of the Adjutant General's office of the New Mexico National Guard. There is no doubt that the Adjutant General's office was subject to such an investigation and inquiry into its affairs by a duly impaneled grand jury. See Section 41–5–15, NMSA, 1953 Compilation.

Since we have determined that the district court had exclusive jurisdiction over the felonies charged in the indictments, the grand jury had jurisdiction to inquire into any matter material to the alleged offenses. And if any material false statement was made under oath in the course of such inquiry, it constituted perjury within the contemplation of Section 40–32–2, NMSA, 1953 Compilation; see 3 Wharton, Criminal Law and Procedure §§ 1302, 1305, (1957).

In view of what we have said, it follows that the alternative writ of prohibition heretofore issued must be discharged.

It is so ordered.

McGHEE, J., and PAUL TACKETT, EDWIN L. SWOPE, and J. V. GALLEGOS, District Judges, concur.