575 S.E.2d 320

**STATE of West Virginia ex rel. Pamela Jean GAMES–NEELY, Prosecuting Attorney for Berkeley County, Petitioner,**

v.

**Honorable David H. SANDERS, Judge of the Circuit Court of Berkeley County, and Christopher Scott Winn, Respondents.**

No. 30691.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 8, 2002.

Decided Dec. 3, 2002.

Brandon C.H. Sims, Assistant Prosecuting Attorney, Martinsburg, for the Petitioner.

Brenda A. Waugh Brenda Waugh, Attorney at Law, L.C., Inwood, for the Respondent, Christopher Scott Winn.

ALBRIGHT, Justice.

The State of West Virginia (hereinafter "State"), through the Prosecuting Attorney of Berkeley County, petitions this Court to issue a writ of prohibition to prevent respondent, the Honorable David H. Sanders, Judge of the Circuit Court of Berkeley County, from ordering the dismissal of a misdemeanor criminal complaint on the ground that the subsection of the statute in which the charged offense was established is unconstitutional. The statute at issue, West Virginia Code § 15–1E–87 (1998) (Repl.Vol.2000), provides punishment through the state court system of members of the state military forces, not in federal service, who are convicted of being absent from the military without leave. Having found no clear-cut legal error in the lower court's ultimate decision, the relief sought is denied.

## I. Facts and Procedural History

Christopher Scott Winn enlisted as a member of the West Virginia Air National Guard. During his service, Mr. Winn failed to attend required unit training assemblies without obtaining advance approval for his absence.[1] As a consequence, Mr. Winn was progressively demoted in rank until he was given the final demotion to the permanent grade of A1C (E–3), effective July 5, 2000. The absences at the required training sessions also resulted in a criminal complaint, filed on July 16, 2000, in the Berkeley County Magistrate Court, charging Mr. Winn with the misdemeanor offense of violating West Virginia Code § 15–1E–87(b) by being absent without

leave at the required military training sessions.

During the pendency of the criminal action, Mr. Winn was conditionally granted permission by the Air National Guard authorities to make up the unexcused absences, without pay. According to the State, the memorandum by which Mr. Winn was permitted to make up the missed training sessions included the condition that "[f]uture discussions with the prosecutor's office may result in withdrawal of this approval." Thereafter, Mr. Winn completed the necessary number of unit training assemblies without pay. Nonetheless, the criminal matter remained on the magistrate court docket. After the date for a suppression hearing and jury trial was set in magistrate court for the pending criminal charge, a continuance was granted to Mr. Winn so that he could test the constitutionality of the subject criminal statute by petition to the circuit court for a writ of prohibition.[2] The petition for writ of prohibition was filed in the circuit court on June 25, 2001, and the lower court heard oral arguments on the pleadings on August 13, 2001. After finding subsection (b) of West Virginia Code § 15–1E–87 unconstitutional, the lower court granted a writ of prohibition directing dismissal of the pending charges and barring any further prosecution of Mr. Winn under this statute.

The State seeks to bar enforcement of the circuit court's October 22, 2001, order by means of this petition for the extraordinary remedy of prohibition.

## II. Standard of Review

As we have consistently noted, "this Court will use prohibition ... to correct only substantial, clear-cut, legal errors plainly in contravention of a clear statutory, constitutional, or common law mandate which may be resolved independently of any disputed facts[.]" Syl. Pt. 1, in part, *Hinkle v. Black*, 164 W.Va. 112, 262 S.E.2d 744 (1979). We further explained in syllabus point four of *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996), that:

---

**1.** There is evidence in the record that Mr. Winn had approximately twenty unexcused absences from the scheduled training sessions.

**2.** A writ of prohibition lies in a criminal case to prevent the prosecution of an offense created by an unconstitutional statute. Syl. Pt. 1, *Simms v. Dillon*, 119 W.Va. 284, 193 S.E. 331 (1937).

[i]n determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Because we have determined that the State has no other adequate means to obtain review of the lower court's action with regard to a substantive legal issue not previously addressed by this Court, we will proceed with our examination of matters raised by this petition.

### III. Discussion

■ The lower court essentially determined that subsection (b) of West Virginia Code § 15–1E–87 is unconstitutional inasmuch as it violates the supremacy and militia clauses of the United States Constitution. While we find a paucity of helpful authority,[3] we agree with the ultimate conclusion of the lower court that the statutory provision is unconstitutional for the reasons which follow.

The militia clauses of Article I, Section 8 of the United States Constitution provide that:

The Congress shall have the Power ...

. . .

To provide for calling forth the Militia to execute the Laws of the Union, suppress Insurrections and repel Invasions;

To provide for organizing, arming, and disciplining, the Militia, and for governing such Part of them as may be employed in the Service of the United States, reserving to the States respectively, the Appointment of the Officers, and the Authority of training the Militia according to the discipline prescribed by Congress....

U.S. Const. art. I, § 8, cls. 15, 16. By these terms, Congress was granted authority to organize, arm and discipline the militia of the various states and power was expressly reserved to the states to appoint officers and train the militia "according to the discipline prescribed by Congress."[4] *Id.* at cl. 16. While it is arguable that the limitation placed on the states requiring the training of the

---

**3.** An early United States Supreme Court case is one of the few authorities we discovered which presented a question related in some degree to the one before us. In *Houston v. Moore,* 18 U.S. (5 Wheat.) 1, 5 L.Ed. 19 (1820), the Supreme Court was faced with the question of whether a state law which established a court-martial for trial and punishment of members of the militia for failure to respond to a presidential call for active duty was an unconstitutional interference with the power conferred upon Congress through the militia clauses. The opinion in *Houston* is somewhat at odds with itself and does not provide definitive guidance. It appears from the majority opinion in *Houston* that the Supreme Court found that state militia legislation was federally preempted, but nevertheless upheld the conviction of Houston for desertion under the questioned state law by finding that Congress had implicitly allowed states the authority to enforce the federal law. A more recent United

States Supreme Court case, *Perpich v. Department of Defense,* 496 U.S. 334, 110 S.Ct. 2418, 110 L.Ed.2d 312 (1990), continued this recognition of state and federal concurrent legislation with regard to the militia in light of the dual enlistment system of National Guard members. The instant case raises a somewhat different issue by questioning how different a state punishment may be under such concurrent legislation.

**4.** The term militia has more than one connotation. As explained by one authority, "[t]he militia is classified into the organized militia consisting of a National Guard and Naval Militia, and the unorganized militia consisting of those who are not members of the National Guard or Naval Militia." 53 Am.Jur.2d Military and Civil Defense § 26 (1996). Reference throughout this opinion to the militia or state militia is intended to mean the organized militia or National Guard.

militia "according to the discipline prescribed by Congress" is limited solely to the means of and the exercise of actual training, we conclude that a more inclusive connotation was intended by the framers of our national charter. As one court has reasoned, the term discipline in the military framework means the entire "system of drill"[,] "systematic training" [or] "training to act in accordance with established rules." *State ex rel. Poole v. Peake,* 22 N.D. 457, 135 N.W. 197, 201 (N.D.1912) (citations omitted). In that sense, the obligation to be present at one's post of duty and not to absent oneself therefrom without leave is an integral part of the drill or system of training in the military to act according to established rules. Likewise, the penalties or punishment for failing to perform this obligation must be seen, consequently, as part and parcel of that scheme of discipline. In its examination of these constitutional provisions, the United States Supreme Court in *Perpich v. Department of Defense,* 496 U.S. 334, 110 S.Ct. 2418, 110 L.Ed.2d 312 (1990), observed that under the militia clauses of the federal constitution a state is permitted to form and maintain a state militia, subject to state legislation and control, so long as a state's militia is dually subject to federal law. *Id.* at 354, 110 S.Ct. 2418.

The constitutional grant of dual authority with regard to the states' militias has resulted in both a federal and state "code of military justice" being applicable to the members of our state militia. The concurrent enactments generally contain similar provisions; however, the instant case involves a difference between our state Code of Military Justice [5] and the federal Uniform Code of Military Justice [6] with respect to members of the West Virginia National Guard when they are not in federal service. This difference in concurrent laws raises the issue before us: whether the state may control its own militia when not in federal service in a manner differently than the discipline prescribed by Congress.

The West Virginia Code of Military Justice addresses two ways by which misconduct for being absent from the military without leave (hereinafter "AWOL") may be prosecuted and punished. The first method is set forth in subsection (a) of West Virginia Code § 15–1E–87 and reflects the same substantive language as the concurrent federal statute [7] by stating that any person subject to the statute who, without approval,

(1) Fails to go to his or her appointed place of duty at the time prescribed;

(2) Goes from that place; or

(3) Absents himself or herself or remains absent from his or her unit, organization or place of duty at which he or she is required to be at the time prescribed; shall be punished as a court-martial may direct.

W.Va.Code § 15–1E–87(a).

The second way of punishing AWOL offenses under our state Code of Military Conduct appears in subsection (b) of West Virginia Code § 15–1E–87 as follows:

In addition, the offense committed under subsection (a) of this section, constitutes a misdemeanor triable in the criminal courts of this state. Any person convicted hereunder shall be sentenced to confinement in the county or regional jail as follows: (1) One day for each unit training assembly from which the person was absent without leave; or (2) one day for each day of annual training or other duty from which the person was absent without leave.

These sentences are mandatory and shall not be subject to suspension, probation, reduction or home confinement.

The problem which arises from subsection (b) is that it specifies a punishment for AWOL offenses beyond the congressional parameters of that punishment courts-martial may impose.

Title 32 of the United States Code provides for general, special and summary courts-martial of the National Guard who are

---

5. W.Va.Code §§ 15–1E–1 to –138.

6. Title 10 U.S.C., made applicable to members of the national guard not in federal service by the provisions of 32 U.S.C. 326.

7. 10 U.S.C. § 886.

not in federal service. 32 U.S.C. § 326. Although the federal law regarding the convening of courts-martial is couched in permissive terms, no latitude as to the application of the prescribed punishment is provided. Specifically, general courts-martial have the power to impose a sentence of "(1) a fine of not more than $200; (2) forfeiture of pay and allowances; (3) a reprimand; (4) dismissal or dishonorable discharge; (5) reduction or a noncommissioned officer to the ranks; or (6) any combination of these punishments." 32 U.S.C. § 327. Special courts-martial have "the same powers of punishment as a general court-martial, except that a fine imposed by a special court-martial may not be more than $100 for a single offense." 32 U.S.C. § 328(c). Summary courts-martial "may sentence to a fine of not more than $25 for a single offense, to forfeiture of pay and allowances, and to reduction of a noncommissioned offer to the ranks." 32 U.S.C. § 329(b). Additionally, any courts-martial "may, instead of imposing a fine, sentence to confinement for not more than one day for each dollar of the authorized fine." 32 U.S.C. § 330.

In light of these congressionally directed punishments, we believe West Virginia Code § 15–1E–87(b) cannot stand scrutiny because the sole punishment provided by its terms is mandatory confinement in jail. This clearly creates a dichotomy between the punishment which may be imposed under state and federal laws for the same offending conduct. While it may be argued that procedural differences between military and civil courts make the provisions of West Virginia Code § 15–1E–87(b) more favorable to the defendant, the overriding concern here remains that the punishment provided by the state statute is not in accord with that "discipline prescribed by Congress." U.S. Const. art. I, § 8, cl. 16. Accordingly, we hold that the provisions of West Virginia Code § 15–1E–87(b) (1998) (Repl.Vol.2000) are unconstitutional because they violate the militia clauses of Article I, Section 8 of the United States Constitution by furnishing a punishment beyond that prescribed by Congress.

The basis of our holding makes it unnecessary to address the issues of double jeopardy and preemption which were raised before the lower court. Initially, we observe that even if the state and federal statutes provided the same punishment for AWOL offenses, West Virginia Code § 15–1E–87(b) still would likely be unconstitutional based on double jeopardy principles.[8] We find this to be so because subsection (b) subjects a defendant to trial in two separate tribunals of the same jurisdiction—a court-martial proceeding and also a trial in a civilian court—for the same offense. With regard to preemption, we only note that the issue of whether, and if so to what degree, Congress intended to permit states to legislate in this area and to impose a penalty through their criminal courts in lieu of the courts-martial system is not clearly decided. *See* Patrick Todd Mullins, *The Militia Clauses, the National Guard, and Federalism: A Constitutional Tug of War,* 57 Geo. Wash. L.Rev. 328 (1988). While we are not inclined to think that Congress meant to completely preempt state legislative action by occupying the field on this subject, it is unnecessary for us to decide that issue. This may be an appropriate issue for the federal courts to resolve.

For the above-stated reasons, the writ of prohibition is denied.

Writ denied.

---

8. U.S. Const. amend. V; W.Va. Const. art. III, § 5.