STATE OF NORTH DAKOTA, EX REL. LAUREAS J. WEHE, a Commissioner of the North Dakota Workmen's Compensation Bureau, Respondent, v. LYNN J. FRAZIER, as Governor of the State of North Dakota, Appellant.

(182 N. W. 545.)

**Certiorari — writ does not lie to review sufficiency of evidence where jurisdiction is shown; writ appropriate to review Governor's jurisdiction in removing commissioner of Workmen's Compensation Bureau.**

1. Certiorari in this state will lie only to review acts in excess of jurisdiction; it will not review the sufficiency or insufficiency of the evidence where jurisdiction is shown; it is an appropriate proceeding to review the jurisdiction of the Governor in a proceeding removing a commissioner of the Workmen's Compensation Bureau.

**Certiorari — constitutional law — officers — "removal for cause" means for legal cause; act limiting Governor's right of removal not an interference with executive function; in exercising power of removal, Governor acts in quasi judicial capacity, with legal and executive discretion; to remove officer, Governor must accord a hearing and right to examine witnesses and produce testimony; removal of commissioner of Workmen's Compensation Bureau by Governor without hearing held void; certiorari lies to review judicial acts of the Governor in removing commissioner of Workmen's Compensation Bureau.**

2. (a) A removal for cause means for a legal cause. An act of the legislature limiting the right of removal by the Governor for a legal cause shown is not an interference with an executive function.

(b) The Governor in exercising the power of removal over such commissioner acts in a quasi-judicial capacity pursuant to the legislative limitations, and must exercise a legal discretion in addition to an executive discretion.

(c) Where the legislature has prescribed the existence of a legal cause for the removal of an officer by the Governor, it is essential, in order to confer jurisdiction for such removal, that a hearing be had, where the accused may know the nature of the charges against him, may cross-examine witnesses, and produce testimony to disprove the charges.

(d) Where the Governor has removed a commissioner of the Workmen's Compensation Bureau without according to such commissioner a hearing as required, it is *held* that the order of removal is void and that certiorari will lie to review the jurisdictional acts of the Governor.

Officers — in absence of hearing Governor had no power to remove commissioner of Workmen's Compensation Bureau as upon default where he refused to be sworn.

3. Where the Governor did not accord to such commissioner a hearing as required by law, and where the commissioner refused to be sworn as a witness unless such hearing was accorded, it is held that jurisdiction was not conferred to order the removal of the relator as commissioner as upon a default.

#### Opinion filed March 12, 1921.

Certiorari proceedings in District Court, Burleigh County, *Nuessle*, J. to review the action of the Governor in removing the relator as a commissioner ·of the Workmen's Compensation Bureau.

The Governor has appealed from the order and from the judgment entered.

Judgment construed and affirmed.

*Foster & Baker*, and *Simpson & Mackoff*, for appellant.

Upon the refusal of the respondent to be sworn at the hearing to be examined as a witness as to matters material to the inquiry at the instance of the Governor, it was legal for the Governor to render judgment as upon *nil dicit*, confession or default. Comp. Laws 1913, § 7870.

This court has held that § 7870, providing for the examination of the adverse party applies to a proceeding for the removal of an officer. State v. Borstad, 27 N. D. 539, 147 N. W. 380.

Judgment as by default or *nil dicit* may be entered against a defendant where his plea or answer is stricken out. 23 Cyc. 749; Belton v. Smith, 45 Ind. 294; Followed in Nelson·v. Neeley, 63 Ind. 197.

There is very respectable authority to the effect that a public officer appointed for a fixed time subject to removal generally for cause may be removed without notice and hearing. People v. Welty, 75 Ill. App. 514; Hertel v. Boismenue, 229 Ill. 478, 82 N. E. 298; Wilcox v. People, 90 Ill. 186; People v. Higgins, 15 Ill. 110; People ex rel. Platt v. Stout, 19 How. Pr. 176, 11 Abb. Pr. 17; Territory v. Cox, 6 Dak. 510.

*L. J. Wehe,* and *Theodore Koffel,* for respondent.

Even if Commissioner Wehe had defaulted and not appeared at the time set for the alleged hearing before the Governor, the Governor would not have had the right to remove him for said default without the introduction and taking of some evidence to support some of the alleged charges. State ex rel. Wehe v. Frazier, opinion of Dist. Court herein.

Function of writ to correct proceedings where boards and tribunals act without their jurisdiction. Where there is no writ of error or appeal, nor any other plain, speedy, and adequate remedy, a writ of certiorari will issue. State ex rel. Bone v. Sioux Falls, 25 S. D. 3, 124 N. W. 693; State ex rel. Dollard v. Hughes County, 1 S. D. 292, 10 L.R.A. 588, 46 N. W. 1127; State ex rel. Tedford v. Knott, 207 Mo. 167, 105 S. W. 1040; Riley v. Crawford (Iowa) 165 N. W. 345.

The Governor may be enjoined by injunction, and the issue determined whether or not his removal of a state official was according to law; and, if not, he may be permanently enjoined and the official restored to office, if not legally removed therefrom. State ex rel. Poole v. Peake, 22 N. D. 457, 40 L.R.A.(N.S.) 354, 135 N. W. 197; Ekern v. McGovern, 154 Wis. 152, 142 N. W. 595; Shaw v. Frazier & Wehe, 39 N. D. 430, 167 N. W. 510.

Certiorari is the proper remedy to review the decision of the governor in removing an official from office. State ex rel. Nash v. Burnquist (case not yet reported, decided Dec. 17, 1920); State ex rel. Martin v. Burnquist (Minn.) 170 N. W. 201; State ex rel. Kinsella v. Eberhart, 116 Minn. 33, 133 N. W. 857.

## Statement.

BRONSON, J. This is a certiorari proceeding by the relator to test the validity of his removal by the Governor as a commissioner of the Workmen's Compensation Bureau. The Governor has appealed from the order of the trial court overruling a motion and a demurrer to the application and, from the judgment in certiorari, determining the removal to be invalid. The facts in the record are as follows:

Pursuant to chapter 162, Laws of 1919, the Governor on March 31, 1919, appointed the relator as a commissioner of the Workmen's Compensation Bureau for the three-year term. The relator qualified and

entered upon the performance of his duties. In December, 1919, at a special session of the legislature, chapter 162, Laws 1919, was amended by chapter 73, Spec. Sess. 1919, so as to increase the membership of the bureau to five members and to extend the term of the relator until the second Monday in January, 1923. This act became effective as a law on July 1, 1920. On April 19, 1920, the Governor, through a letter to the relator, upon charges therein preferred, temporarily suspended him as a commissioner until final determination thereof. In general, the letter charged that the relator had carried on a private law practice; that he had used bureau supplies; that he had shown generally a lack of executive ability, irascibility, and incompatibility of temperament; That at public hearings he had conducted himself detrimentally to public interest; that employees of the bureau had tendered their resignation by reason of his presence, and with difficulty were retained as employees; and that his presence impaired the efficiency of the bureau's operation. This was followed by a letter, dated April 20, 1920, to the relator, directing him to show cause, before the Governor on April 23, 1920, why his suspension should not be made permanent.

In response to this letter, the relator appeared before the Governor. He filed written objections to the jurisdiction of the Governor to take any action; these were overruled. The Governor stated that he did not know that it was necessary to have a hearing at all, but, in order to give the relator a chance to answer the charges made, this hearing was called; that he called him there to show, if he had any evidence or any reasons to produce, why the order issued suspending him should not be enforced. The relator asked whether the affidavits would be served upon him so he could see their contents. In the record there are contained numerous affidavits which set forth stated derelictions of the relator, and upon which the Governor, in his return, has asserted that cause was shown for his action in removing the relator as a commissioner. The Governor stated that they were not serving any affidavits; that the general trend of the affidavits was contained in the letter he wrote the relator; that the letters will speak for themselves. The relator asserted that he was willing to answer and make a reply, but that no charges had been made; that there were no charges to which to reply; that he wanted to know what the charges were, in order to

defend them. The Governor replied by stating that the charges were set forth in the letter; that there was nothing to the procedure, unless the relator wanted to answer those charges then. The relator asserted that he was willing to answer; that he denied each and every part of each and every allegation, matter, statement and thing contained in the letter and also in the affidavits, so far as they charged the relator with any official misconduct in office, although he did not know the contents thereof. The Governor inquired whether the relator was ready to take up the charges and the relator answered in the affirmative. The Governor then stated that the relator had been given an opportunity to come there and answer the charges that had been made. But, if he was going to object to his jurisdiction, he did not see that there was anything further to take up at that time. Counsel, appearing against the relator, stated that the Governor, in a matter of this kind, made his rules and procedure; that the relator had asked to come before him; that if he objected to his jurisdiction, the place for him · was before the court, not before the Governor; that the Governor has ·investigated, and that he investigates as he pleases. The Governor asked relator if he wished to be sworn, and the relator replied that he refused to be sworn until he knew what the specific charges were; that he came there to answer any charges the Governor had; that he demanded the right of cross-examination, and the calling of any witnesses to which he might be entitled in defense. The Governor then stated that there were charges made against the relator set forth in the letter; that he would like to ask him some questions concerning the affidavits under oath; that, if he wished to be questioned, they would proceed; if not, this would end the hearing. Then followed the following colloquy between the Governor and the relator.

"Mr. Koffel: Do I understand the Governor's position to be that he refuses to produce any witnesses or record he may have, and that he wants to ask the defendant, under oath, concerning his entire record as a public officer?

"Governor Frazier: The whole situation is this, as to whether or not Mr. Wehe wants to answer the questions in regard to these charges that have been made against him, at this time. If he wants to answer to them, this is his opportunity.

· "Mr. Koffel: As stated before, we are willing to answer them.

· . "Mr. Wehe: Let the records show that we are ready to answer when they have produced their case and that we are willing to answer when given a hearing.

"Governor Frazier: If you want a hearing—

"Mr. Wehe: We demand a hearing, and we refuse to answer any questions before their witnesses are produced. We are right here willing at all times to produce our defense on any and all specific charges.

. "Governor Frazier: Then you do not want to be sworn?

"Mr. Wehe: I absolutely refuse to be sworn at this time.

"Governor Frazier: Then the meeting is adjourned."

No further hearing was held. The record shows that the affidavits were neither produced at the hearing nor served upon the relator.

Subsequently the relator was debarred from personal attendance upon the duties of the office, but since the order of removal has offered to perform such duties. Later, the relator instituted an action by mandamus, to compel the compensation bureau to pay to the relator his salary for the month of April, 1920. A demurrer to the petition of the relator was sustained in the trial court and overruled in this court. State ex rel. Wehe v. North Dakota Workmen's Compensation Bureau, 45 N. D. 147, 180 N. W. 49. Later, the relator sought the exercise of the original jurisdiction of this court in a certiorari proceeding, which was denied. Thereupon, in November, 1920, this action in the trial court was instituted and an order to show cause why the Governor should not certify to the court the removal proceedings had. The Governor appeared, and moved to vacate the order upon the grounds that the court had no jurisdiction over the Governor and the subject-matter. That the application was not seasonably made and did not state a cause of action. The court overruled the motion and demurrer. The Governor then made a return wherein he justified the removal upon satisfactory evidence presented to and considered by him, after a hearing was ordered, had, and an opportunity given the relator to appear and defend and he further showed that in November, 1920, C. A. M. Spencer had been appointed and had qualified as commissioner in place of the relator. At the trial the letters and the affidavits hereinbefore mentioned, upon which the Governor's action

were premised, were received; also a stenographic transcript of the proceedings had before the Governor concerning such removal. It was agreed and conceded, as the trial court finds, that the record contains substantially a full and complete record of all the facts and proceedings had and done before the removal of the relator as commissioner; that any further return to the writ would not furnish additional facts; that the defendant waived any right or demand to make such further return to such writ. The trial court accordingly ordered that the writ be considered as issued and returned; that the hearing be had as if upon a writ of certiorari. Pursuant thereto, the court determined that the removal of the relator was irregular, illegal and void and ordered that the same be set aside; that the relator be reinstated in his position as commissioner with all the rights, privileges, and emoluments, with interest thereto pertaining, as of the date of April 23, 1920.

## Contentions.

The Governor contends (1) that certiorari is not the proper remedy for the relator; (2) that, concerning the acts involved herein, there is no legal control over the Governor excepting that furnished by impeachment; and (3) that upon the refusal of the relator to be sworn at the hearing and to be examined as a witness it was legal for the Governor to render judgment as upon *nil dicit*, confession and default.

## Decision.

(1) *Certiorari:* Both the supreme and district courts possess original jurisdiction to issue writs of certiorari. Const. §§ 87, 103. Section 8445, Comp. Laws 1913, amended (Laws 1919, chap. 76) provides: "A writ of certiorari shall be granted by the supreme and district courts, when inferior courts, officers, boards, or tribunals have exceeded their jurisdiction and there is no appeal, nor, in the judgment of the court, any other plain, speedy, and adequate remedy, and also when in the judgment of the court it is deemed necessary to prevent miscarriage of justice."

The function of this writ under the statute is peculiar and *sui generis*. This court, in agreeing with an interpretation made in South

Dakota upon a similar statute, has held that, gathering its meaning and intent from its language, the office of the writ which it authorizes is not confined to a review of judicial or quasi-judicial proceedings, but extends to every case where, in the language and upon the conditions of the statute, inferior courts, officers, boards, or tribunals have exceeded their jurisdiction. State ex rel. Johnson v. Clark, 21 N. D. 517, 528, 131 N. W. 715; State ex rel. Dollard v. Hughes County, 1 S. D. 292, 10 L.R.A. 588, 46 N. W. 1127; State ex rel. Poole v. Peake, 22 N. D. 457, 461, 40 L.R.A.(N.S.) 354, 135 N. W. 197; State ex rel. Poole v. Nuchols, 18 N. D. 233, 238, 20 L.R.A.(N.S.) 413, 119 N. W. 632.

The contention that the statute (Comp. Laws 1913, § 8445) by construction, refers to inferior courts, inferior officers, inferior boards, or inferior tribunals, is without merit. No such construction may be placed upon the plain reading of the statute. The function of the writ has heretofore been applied to a general court martial although such court martial belongs to the executive department, is organized, and its judgments approved by, the Governor. State ex rel. Poole v. Peake, 22 N. D. 461, 40 L.R.A.(N.S.) 354, 135 N. W. 197, supra; State ex rel. Poole v. Nuchols, 18 N. D. 238, 20 L.R.A.(N.S.) 413, 119 N. W. 632, supra. Chapter 162, Laws 1919, which grants to the Governor the right of removal for cause, does not provide for an appeal.

The writ will lie only if the Governor has exceeded his jurisdiction. It follows that it will not lie to review the sufficiency or the insufficiency of the evidence or the merely erroneous orders of the Governor, if the Governor acted within his jurisdiction. State ex rel. Noggle v. Crawford, 24 N. D. 8, 11, 138 N. W. 2; Fuller v. Board of University & School Lands, 21 N. D. 212, 221, 129 N. W. 1033; Smalley v. Lasell, 26 S. D. 239, 128 N. W. 141. It is evident that certiorari, if applicable, is an appropriate remedy. See 11 C. J. 108, 112.

(2) *Legal Control over the Governor:* The contention is made that the Governor is immune from judicial control or interference by reason of his position as chief executive officer, exercising an executive function in a removal proceeding. This might be conceded, for purposes of this case, if the Constitution or the legislature, in creating

47 N. D.—21.

the power of removal, had prescribed an arbitrary or solely executive function or removal. See Wilcox v. People, 90 Ill. 186. Thus, it might be so contended, if the legislature had provided that the officer might be removed without cause dependent solely upon the exercise of executive discretion. The sovereign power of removal from office is not necessarily an executive function, unless so made by the Constitution and statutes of the state. This power, formerly at the common-law resident in the King, in our state rests with the people, and evinces its expression in the Constitution or statutory laws. It may be executive, judicial or legislative, dependent upon the manner in which the people in the specific instance have allotted or bestowed this power. 29 Cyc. 1406. Thus, the legislature may exercise the power directly by impeachment proceedings. N. D. Const. §§ 194–196. Again the legislature, pursuant to constitutional provision, might grant this power of removal to the judicial department. Section 197 N. D. Const., provides that all officers not liable to impeachment shall be subject to removal for certain acts in such manner as may be provided by law. This court has held, in construing such constitutional provision, that there may be removal for other causes, too, or without cause, if the legislature so declares, provided they are officers whose offices are created by statute. State ex rel. Moore v. Archibald, 5 N. D. 359, 66 N. W. 234. The legislative prescription, in such event, would make the exercise of this power of removal judicial in its character. The exercise of the power has been termed to be of a judicial character. State ex rel. Shaw v. Frazier, 39 N. D. 430, 444, 167 N. W. 510; State ex rel. Kinsella v. Eberhart, 116 Minn. 313, 39 L.R.A.(N.S.) 788, 797, 133 N. W. 857, Ann. Cas. 1913B, 785; 29 Cyc. 1406; Atty. Gen. v. Jochim, 99 Mich. 358, 23 L.R.A. 699, 41 Am. St. Rep. 616, 619, 58 N. W. 611; Bailey, Habeas Corpus, § 173. Accordingly, the legislature has provided for proceedings for the removal of state officers not liable to impeachment, and other public officers, by direct judicial proceedings for that purpose. Comp. Laws 1913, §§ 10,467–10,482. Likewise, the legislature might confer this power of removal upon the executive department, an officer, or board thereof, and make such power wholly an executive function. Thus, the Game and Fish Commission may appoint and remove at pleasure deputy game wardens. Comp. Laws 1913, § 10,269.

The fact that the Constitution vests in the Governor the executive power section 71, Const. does not grant to the Governor the power of removal, unless by legislative act such power of removal is made an executive power. This court has heretofore held in construction of constitutional powers, that the power of appointment to office (and this includes power of removal) is vested neither in the executive nor judicial department of the Government, excepting as the Constitution has expressly granted such power. That this power resides in the legislature. That all governmental sovereign power is vested in the legislature, except such as granted to other departments of the government or expressly withheld from the legislature by constitutional restrictions. State ex rel. Standish v. Boucher, 3 N. D. 389, 396, 21 L.R.A. 539, 56 N. W. 142. In that case the broad contention was made that the right to appoint to office and to fill vacancies, except as to legislative and judicial offices, was an implied executive function, and that the Governor, in whom the executive power was vested by the Constitution, possessed the inherent right to appoint officers and fill vacancies as an executive function, independently of express constitutional or statutory authority. This contention was denied, a distinction being drawn between the powers of the President under the Federal Constitution and those of the Governor in this state, and it was held that the power of appointment to office does not necessarily and in all cases inhere in the executive department; and that when, as in this state, the express provisions of the Constitution vest in the Governor a limited power of appointment, such grant is exclusive, and no other or greater appointing power can be exercised. State ex rel. Standish v. Boucher, supra, 409. See O'Laughlin v. Carlson, 30 N. D. 213, 221, 152 N. W. 675; State ex rel. Langer v. Crawford, 36 N. D. 385, 162 N. W. 710, Ann. Cas. 1917E, 955; State ex rel. Langer v. Scow, 38 N. D. 246, 164 N. W. 939; Baltimore v. State, 15 Md. 376, 74 Am. Dec. 572. Accordingly, it follows that if the legislature possesses the power of prescribing the method and manner of appointment to and removal from office, it may allot this power to either the executive department or the judicial department or to both and may prescribe the method of its exercise, namely, partly executive, partly judicial, that is quasi-judicial in its nature. So, when the Governor exercises this power pursuant to the

legislative grant, it may not be said that the limitations placed on the exercise of this power is an interference with an executive function, when such power was not thereto possessed as an executive function and when, further, it is not granted to him as a purely executive function. The legislature has provided that the Governor may remove certain officers, such as state's attorneys, clerks of the district court, etc., when guilty of certain acts after a hearing as prescribed, chap. 184, Laws 1919 (amended Comp. Laws 1913, § 685). This right of removal is made subject, however, to the right of appeal to the district court and to a trial de novo therein. Comp. Laws 1913, § 690. Surely, it may not be said that this legislative grant and limitation concerning the Governor's right of removal under such law and the right accorded of reconsideration by the judicial department is either the creation of, or an interference with, a purely executive function. Rather does it demonstrate a legislative will to grant to the Governor the power to act in a quasi-judicial manner and to avail himself, if he desires, of judicial rules of procedure applicable. State v. Borstad, 27 N. D. 533, 147 N. W. 380, Ann. Cas. 1916B, 1014; State ex rel. Shaw v. Frazier, 39 N. D. 430, 167 N. W. 510. In the latter case the constitutionality of the act was affirmed as against the contention that it delegated judicial powers to the Governor. Further it was stated "While the power to remove from office is generally regarded as a power possessed by the courts, in the absence of an express or implied grant to another authority in the government, this power may be exercised by the legislature or may be delegated by the legislature to some other authority."

In the legislative act under consideration, the legislature has granted to the Governor the power of appointment and of removal, but it has expressly provided that the removal must be for cause. Laws 1919, § 4, chap. 162; Spec. Sess. Laws 1919, chap. 73. An express legislative limitation was placed upon this executive power of removal. This limitation prescribed the exercise of a legal discretion in addition to an executive discretion. This limitation, as has been stated, the legislature had the right to prescribe. A removal for cause means for a legal cause. State ex rel. Hart v. Duluth, 53 Minn. 238, 39 Am. St. Rep. 595, 55 N. W. 118; Townsend v. Sauk Centre, 71 Minn. 379, 74 N. W. 150; State v. Donovan, 89 Me. 451, 36 Atl.

985; Andrews v. Biddeford Police Bd. 94 Me. 76, 46 Atl. 804; State ex rel. Reid v. Walbridge, 119 Mo. 383, 41 Am. St. Rep. 663, 24 S. W. 437; Hayden v. Memphis, 100 Tenn. 582, 47 S. W. 182. When the legislature deemed it proper to prescribe a legal cause as the basic ground for the removal of the office involved, necessarily there then applied those fundamentals in Anglo-Saxon jurisprudence, essential and recognized in any free and democratic government, namely, the right of the accused to a hearing, to be confronted with his accusers, and to the right of defense. See People ex rel. Metevier v. Therrien, 80 Mich. 187, 195, 45 N. W. 78.

In a mandamus action involving this removal proceeding at bar, this court has stated: "The respondent relies upon the familiar principle that where offices are created with definite terms and the incumbents are removable for cause, sufficient legal cause must exist to warrant removal. Also that officials not removable at pleasure are entitled to a hearing for the purpose of ascertaining whether or not sufficient cause for removal exists, and that the hearing must be one at which they are given reasonable opportunity to be present, to know the nature of the charges against them, to cross-examine witnesses, and to adduce testimony to disprove the charges. Throop, Pub. Off. §§ 362, 365; Mechem, Pub. Off. § 454. We do not question any of these propositions, but we do not deem them determinative here." State ex rel. Wehe v. North Dakota Workmen's Compensation Bureau, 46 N. D. 147, 180 N. W. 49, 50.

This court, therefore, has already adopted, without dissent, the principle that a legal cause in such case must exist and must be established at a hearing. It is merely trite to state that a legal cause is a judicial cause. It follows, accordingly, that the Governor, in exercising his power in such removal proceeding, necessarily acts in a quasi-judicial manner. That his orders, quasi-judicial in character, are subject to judicial jurisdictional review and that such review does not serve to interfere with any purely executive prerogative. 11 C. J. 108, 120; State ex rel. Shaw v. Frazier, supra; State ex rel. Martin v. Burnquist, 141 Minn. 308, 170 N. W. 201, 609; State ex rel. Kinsella v. Eberhart, 116 Minn. 313, 39 L.R.A.(N.S.) 788, 133 N. W. 857, Ann. Cas. 1913B, 785; State ex rel. Hart v. Duluth, 53 Minn. 238, 39 Am. St. Rep. 595, 55 N. W. 118; Re Nash, 147 Minn.

383, 181 N. W. 570; Ekern v. McGovern, 154 Wis. 157, 46 L.R.A. (N.S.) 796, 142 N. W. 595; People ex rel. Clay v. Stuart, 74 Mich. 411, 16 Am. St. Rep. 644, 41 N. W. 1091.

It is evident from this record that the Governor did not appreciate the extent of this legislative prescription. It is quite apparent that he doubted .whether it was necessary that charges be preferred or a hearing be given. That he considered, to a considerable extent, that he might exercise this right of removal as a pure act of executive discretion based upon facts that might have brought to his attention ex parte as the chief executive. By reason of such construction of his powers, it is further evidence from this record that the Governor overlooked and· ignored, in order to exercise his power of removal for cause, the necessity of granting a hearing to the relator, where the relator might learn the nature of the charges against him and might have an opportunity to answer the same, cross-examine witnesses, and adduce testimony to disprove such charges. Manifestly such hearing was not accorded the relator. It was jurisdictional for the exercise of the power of removal. No legal cause for removal was established at the hearing. The affidavits upon which the order for removal was based were neither produced nor presented. Accordingly it follows that the order of removal must be determined illegal and void unless the act of the relator in refusing to be sworn as a witness has conferred a jurisdiction to order a removal as if upon default.

(3) *Refusal of Relator to be Sworn:* It may ·be granted that the Governor had the right to examine the relator as a witness. State v. Borstad, 27 N. D. 533, 147 N. W. 380, Ann. Cas. 1916B, 1014. The exercise of this right, however, involves the concession that a hearing was necessary with the rights that flow to the.relator at such hearing. Plainly, therefore, this right could not be exercised without according to the relator his rights. The record fairly shows that the relator was willing to be sworn if to the relator a hearing would be accorded. The record fails to show any offer to accord such hearing as was required.

The trial court, in the writ of certiorari, ordered that the relator be reinstated in his position of commissioner with all the rights, privileges, and emoluments, with interest thereto pertaining as of the 23d day of April, 1920, the date of his illegal suspension and removal,

as fully as if said order of removal had never been made. This portion of the judgment, perhaps may, by construction, receive an interpretation beyond the issues in this certiorari proceeding. It appears from the record herein that the Governor has appointed another person in place of the relator as commissioner and that such person has qualified as commissioner. The only issues involved in this proceeding are the jurisdictional questions concerning the order of removal. The questions of law involved between the relator as a de jure commissioner and Mr. Spencer as the de facto commissioner are collateral to the present inquiry. 29 Cyc. 1393. The judgment of the trial court should not be construed to extend further than the restitution of the relator as Commissioner de jure the same as if no order of removal had ever been made. Thus construed and modified the judgment of the trial court should be and is in all things affirmed.

CHRISTIANSON and BIRDZELL, JJ., concur.

ROBINSON, Ch. J. (dissenting). This is a second proceeding to override and annul an order made by the Governor removing Wehe from the office of Workmen's Compensation Commissioner. The first proceeding was a mandamus to compel the Compensation Bureau to pay Wehe a salary for one month after his removal from office. In that case the court stated fully the charges of malfeasance in office made against Wehe and held that such charges were sufficient and constituted good cause for removal. 46 N. D. 147, 180 N. W. 49. This court held on demurrer that the answer and return stated facts sufficient to justify the removal—and that is virtually a decision of this case, because the facts and the records are identical. The first case presents the same identical facts which appear by the Governor's return made pursuant to a writ of certiorari. On April 23, 1920, the complaint or accusing notice was duly served on Wehe and he was cited to appear before the Governor on April 23, 1920, and to show cause why he should not be removed from office. On April 23d Wehe and his attorney appeared before the Governor at his office in the capitol and rather contemptuously denied the right of the Governor to remove him. He objected that the charges were not sufficiently specific; that he should be confronted with the witnesses against him, and at the

same time he refused to be sworn at the request or demand of the Governor.

By the Governor, Wehe was appointed commissioner of the Workmen's Compensation Bureau under a statute requiring him to give all his time to the duties of the bureau. Laws 1919, chap. 263. The work of the bureau was sufficient to demand all the time and thought of the commissioner and also the supervision of the Governor. The accidental insurance thus far collected is $950,000; losses paid, $69,000; expense of administration, $49,000.

The first charge against Wehe is that he did not devote all his time to the duties of his office, that he carried on a private law practice, using for that purpose the help and the stationery of his bureau. The charge was sufficiently specific. The Governor knew it to be true; Wehe knew it to be true, and this court knows that it is true, because, in several cases, Wehe appeared as an attorney before this court and filed lengthy briefs and made lengthy arguments. Wehe v. Wehe, 44 N. D. 280, 175 N. W. 366; Streeter v. Archer, 46 N. D. 251, 176 N. W. 826; State ex rel. Amerland v. Hagen, 44 N. D. 306, 175 N. W. 372 (Comp. Act); State ex rel. McDonald v. Hanley, 43 N. D. 388, 175 N. W. 569; State ex rel. Stearns v. Olson, 43 N. D. 619, 175 N. W. 714. The Governor had several affidavits which he did not care to exhibit to Wehe. One is Exhibit P. It shows that while acting as a commissioner in 1919, W. H. Turner employed Wehe to collect $137; that while Wehe collected and paid the costs of the suit he collected not a penny for Turner, and charged him $50 and rendered a bill for the same on the stationery of the bureau. When Wehe appeared before the Governor with his counsel he either knew or surmised that the Governor had numerous affidavits to sustain the charges made against him. He knew that he could not hope for a decision in his favor. Hence, he did in effect set the Governor at defiance, denying his jurisdiction, denying the sufficiency of the charges against him, claiming a right to inspect affidavits not put in evidence, and claiming a right to a trial according to court practice. He refused to submit to any trial, unless first shown the affidavits made against him. He took the position of dictating to the Governor the terms and conditions on which he would submit to a trial. The Governor demanded that he be sworn as a witness to answer questions concerning the charges, and he absolutely re-

fused to be sworn. His position was not that of an innocent and honest person appearing before the Governor who had appointed him to office. It was that of a person making a grandstand play to attract notice in the newspapers.

Of course, even under the strict rules of court procedure, the Governor had a right to demand that Wehe be sworn and that he submit to an examination concerning the charges against him. If Wehe had been sued and denied the charges against him, in strict legal procedure he might have been called as a witness to testify concerning such charges, and of course he might be confronted with his letters on the stationery of the bureau, charging Turner $50 for services. Under the facts, if the judges feel bound to reverse and annul the order of the executive, it should be done with express and profound regret, for in this court there is always cause for regret when a mere technicality prevails over right and justice.

To hold void the order of removal is to seriously impede and cripple the executive power of the Governor, to invite litigation on every order or removal, and to permit Wehe to sue the state and to recover a salary for a year or more when another person has done the work and received the compensation. Then there is sure to be another proceeding by the Governor and possibly another refusal to testify, another order of removal and another appeal to this court. And there is no limit to the extent and the cost of the litigation.

Another matter for consideration is this: The writ of certiorari does not issue as a matter of right. The writ is discretionary. It will not issue to lay the foundation for doing a wrong, such as the collection of an unearned salary. It will not issue when the petitioner has been guilty of laches and delay which may inure to his benefit and the detriment of the other party.

"A writ of certiorari may be granted by the supreme court and district courts when inferior courts, officers, boards or tribunals have exceeded their jurisdiction and there is no appeal, and no other plain, speedy, and adequate remedy." Comp. Laws, § 8445. Now in the performance of his executive duties the Governor is not an inferior court, an inferior officer, board or tribunal. He is the head of the executive department and he is vested with the executive power of the state. Const. § 71. His constitutional power as executive differs in

no way from that of the President or the Sovereign of Great Britain. The power includes appointments to office and removals from office. When the removal must be for cause and on notice it is for the executive, and not the courts, to determine the sufficiency of the cause, the weight of the evidence, the notice, and the procedure. It is not for the courts to lay down hard and fast rules to govern the exercise of the executive power.

Of course to some extent this rule prevails when the executive undertakes to remove a sheriff or a city mayor. Such a removal is the exercise of a judicial power and an appeal lies to the courts. State ex rel. Shaw v. Frazier, 39 N. D. 430, 167 N. W. 519. But as Job said in his affliction: "The Lord giveth and the Lord taketh away." So when the chief executive gives and then takes away an office, it is the exercise of an executive power and it is for the executive, and not for the courts, to determine the procedure. It is not for the courts to lay down hard and fast rules, or any rule, to govern the executive in the removal of his common and ordinary appointees.

Furthermore, if the order of removal was not void, if it were merely voidable, then the courts have no right to review it. If the order was void it would not prevent Wehe from bringing an action against the state to recover his salary. He had an adequate remedy. Hence the judgment of the district court should be reversed.

GRACE, J. (dissenting). This is an appeal from an order of the district court, overruling the motion and demurrer of the defendant, Lynn J. Frazier, as the Governor of the State of North Dakota, interposed to plaintiff's petition for a writ of certiorari. Defendant challenges the jurisdiction of the court over him as Governor, with reference to the matters therein involved, and its authority and jurisdiction to issue the writ of certiorari, and to adjudge the respondent unlawfully removed from office and reinstating him. This opinion deals only with appointive offices. No question relating to elective or constitutional offices is involved.

The legislature, at the regular session of 1919, duly enacted a law, entitled Workmen's Compensation Fund. Though it is a law of great importance, we feel it not necessary to enter into a discussion of

the principles contained therein, as that is not necessary in our consideration of the matters involved upon this appeal.

The intent of the law is to provide relief for those engaged in hazardous employments, who receive injuries while engaged in the course of the employment. A further understanding of the purpose and the relief intended to be granted by the act will be better ascertained by the reading of it.

Section 4 thereof creates a Workmen's Compensation Bureau, which is attached to the Department of Agriculture and Labor. The Commissioner of Agriculture is, ex officio, one of the commissioners. The act provides, that the governor shall appoint two commissioners who shall devote their entire time to the duties of the bureau, and who may be removed for cause. A salary of $2,500 is provided for each of the members, exclusive of the commissioner of agriculture.

By chapter 73 of the Laws of the Special Session of 1919, the membership of the bureau was increased by providing for an additional commissioner, so that the membership of the bureau, as now constituted, consists of the commissioner of agriculture, and three commissioners appointed by the Governor. By the Amendatory Act, it was also provided, that the Governor may remove the appointed commissioners for cause.

The respondent was appointed a Workmen's Compensation Commissioner on March 31, 1919, for a term of three years, and duly qualified, and entered upon the discharge of his duties. His appointment was for the short term, the terms of the commissioners being, respectively, three and five years. By the law, as amended, the term of this respondent, who was appointed for the short term, was made to expire on the second Monday in January, 1923.

On the 19th day of April, 1920, there was duly served upon the respondent the following charges made against him by the Governor:

State of North Dakota,<br>
Office of the Governor, Bismarck.<br>
April 19, 1920.

Hon. L. J. Wehe, Bismarck, N. Dak.

Dear Sir:

Evidence has been presented to me to the effect that since your

appointment and qualification as Workmen's Compensation Commissioner, and during the period that you have been acting as such commissioner, and drawing the salary of such commission, you have been carrying on a private law practice; that in connection with the carrying on a private law practice, you have had stenographers in the employ of the Workmen's Compensation Bureau do a large amount of stenographic work in connection with such private law practice, during the time which they should have devoted to the work of the bureau, and for which they were paid by the bureau;

That for such stenographic work you have used the office supplies of the bureau, and that by reason of these facts there has been great delay in the work of the bureau, and particularly in the adjustment of claims, which come to the bureau for adjustment, under the law;

That through lack of executive ability, irascibility, incompatibility of temperament and lack of comprehension of the spirit of the Workmen's Compensation Law, and by your general inefficiency, you have been a detriment to the bureau and a handicap, particularly to the work of the claim department of said bureau;

That at the public hearings conducted by the Minimum Wage Commission, held during the month of February, 1920, you conducted yourself in a manner detrimental to public interest, being tactless in the examination of, and disrespectful and offensive to, a number of witnesses, who appeared to testify at such hearing;

That several efficient employees of said bureau have tendered their resignations, on account of your incompetency, inefficiency, irascibility and your attitude of intolerance toward them; that such employees have been induced to remain in the employ of the bureau only through the exercise of the utmost persuasive powers of persons deeply interested in the welfare of the bureau, and that employees decline to remain in the employ of the bureau, if you continue longer as a Workmen's Compensation Commissioner;

That your presence has impaired the efficiency of the bureau and the resignation of such employees would be a great detriment to the work of the bureau, and that your continuance in the office, as Workmen's Compensation Commissioner, will do great harm to the proper functioning of the bureau.

In the light of this evidence, I feel it my duty to inquire what, if

anything, you desire to state in your defense. As the charges, if true, are of such nature as to require the immediate severance of your connection with the Workmen's Compensation Bureau, an immediate reply is requested. Failing to receive any statement from you, or your resignation on or before the 22d instant, I shall consider it my duty to remove you summarily from office. You are hereby notified that I have suspended you from the office of Workmen's Compensation Commissioner, such suspension to continue until the final determination of this matter.

Respectfully,<br>Lynn J. Frazier,<br>Governor.

Upon these charges being served, Mr. Wehe addressed the following communication to Governor Frazier:

April 20, 1920.

Gov. Lynn J. Frazier,
  Capitol Building,
    Bismarck, N. Dak.

Dear Sir:

I have received your favor of April 19, 1920, and wish to say that I am very much surprised at the tone of its contents, and had, at least, expected the general courtesies shown in such matters. Your statements are too general and I must have something more specific to act upon in so serious a matter as this.

I deny the contents of your letter in answer thereto.

I most respectfully refuse to hand in my resignation under the circumstances, and demand a hearing; and shall exercise the duties of the office until I am legally removed.

I deny your right to suspend me from office, as you have attempted to do by your letter until final determination of this matter.

Respectfully,<br>(Signed) L. J. Wehe,

Commissioner of the Workmen's Compensation Bureau.

Thereafter, the following order to show cause was duly served upon Mr. Wehe:

State of North Dakota.<br>Office of the Governor, Bismarck.

To L. J. Wehe, Bismarck, N. Dak.

NOTICE.

You are hereby directed to show cause before me at my office on Friday, April 23, 1920, at three o'clock in the afternoon of said day, why your suspension from office as Workmen's Compensation Commissioner should not be made permanent.

Dated April 20, 1920.

Lynn J. Frazier,<br>Governor.

Pursuant to the order to show cause before the Governor, Commissioner Wehe was present in person, and as attorney in his own behalf, and was further represented by Mr. Theodore Koffel as counsel.

Governor Frazier was assisted by Attorney George K. Foster and C. A. Marr, secretary of the Workmen's Compensation Bureau. The respondent filed objections to the jurisdiction of the Governor, claiming that the Governor had no authority to suspend the respondent and that there were no specific charges filed with and served upon the respondent, setting forth any cause, or causes, for his removal from office; and that the letter dated April 19th, which sets forth the charges against Mr. Wehe, is too indefinite and uncertain to apprise the respondent of the nature of the charges against him, and demanded that he be apprised more fully of the nature of the charges. Further objection was made that the time of notice was too short, and that the proceedings were summary and arbitrary. Other objections of the same character were made at the time of the hearing, as appears from the transcript.

Certain affidavits were filed with the Governor, which were intended to substantiate the charges in the letter of April 19th, which affidavits were not served upon respondent. The Governor stated, at the hearing, that the general trend of the affidavits is contained in the letter that he wrote to Mr. Wehe.

Mr. Koffel's contention was, that no charges had been made, and that there were no charges to answer or to which to reply. The Governor notified him the charges were set forth in the letter to Mr. Wehe.

After more or less discussion along this line, Mr. Koffel, attorney for the respondent, put in an answer for the respondent, which is as follows:

"We deny each and every part of each and every allegation, matter, statement and thing contained in the letter, and also in the affidavits, in so far as they charge this respondent with any official misconduct in office, although we do not know what the contents are."

Governor Frazier then asked if they were ready to take up the charges presented. Mr. Koffel answered, "Yes." Governor Frazier then asked the following question:—

Do you wish to be sworn and proceed with the hearing?

Mr. Wehe: I absolutely refuse to be sworn until I know what the specific charges are. I am here to meet any charges that the Governor may have, and I demand the right of cross-examination and the calling of any witnesses I may be entitled to in defense of myself.

Governor Frazier: There have been charges made against you that have been set forth in that letter which suspends you from office, and now I would like to ask you some questions concerning those affidavits, under oath.

Mr. Koffel: We, as the respondents in the case, demand to have the Governor present his case and until that is done we see nothing for us to deny at this time. There is no evidence that we can bring forth now, excepting of a general nature. It is up to the relator to make a record. As soon as a record is made we are ready to defend.

Governor Frazier: What I stated was, that I wanted to question Mr. Wehe, under oath. If he wishes to be questioned, we will proceed, if not, this will end the hearing.

Mr. Koffel: Do I understand the governor's position to be that he refuses to produce any witnesses or record he may have, and that he wants to ask the defendant, under oath, concerning his entire record as a public officer?

Governor Frazier: The whole situation is this, as to whether or not Mr. Wehe wants to answer the questions in regard to these charges that

have been made against him at this time. If he wants to answer to them, this is his opportunity.

Mr. Wehe: Let the record show that we are ready to answer when they have produced their case and that we are willing to answer when given a hearing.

Governor Frazier: If you want a hearing—

Mr. Wehe: We demand a hearing and we refuse to answer any questions before their witnesses are produced. We are right here, willing at all times to produce our defense on any and all specific charges.

Governor Frazier: Then you do not want to be sworn?

Mr. Wehe: I absolutely refuse to be sworn at this time.

Governor Frazier: Then the meeting is adjourned.

There were a mass of affidavits filed with the Governor, substantiating the charges, among which were those of commissioner of Agriculture and labor, Hagan, ex officio member of the Workmen's Compensation Bureau, and that of Mr. MacDonald, another commissioner, and Mr. John Brown, formerly secretary of the bureau. There were affidavits of stenographers and other employees of the bureau, and abundant and substantial proof of the charges.

The Governor, on April 23d, made his conclusion, to the effect that since the appointment and qualification of Wehe, as Workmen's Compensation Commissioner, and during the time he was acting as such commissioner, and drawing salary as such, that he had carried on a private law practice, using the stenographers of the bureau to do the stenographic work in connection therewith, thereby causing great delay in the work of the bureau and adjustment of claims, and that through lack of executive ability, irascibility, incompatibility of temperament and lack of comprehension of the Workmen's Compensation Law, and by general inefficiency, that the respondent had been a detriment to the bureau and a handicap to the claim department of the bureau; that at public hearings conducted by the Minimum Wage Commission, respondent had conducted himself in a manner detrimental to public interest, being tactless in the examination of, and disrespectful and offensive to, witnesses who appeared to testify at such hearings.

That several efficient employees of the bureau had tendered their resignation on account of the incompetence, inefficiency, irascibility

and respondent's attitude of intolerance toward them, and had been induced to remain in the employ of the bureau only through the exercise of the utmost persuasive powers of persons deeply interested in the welfare of the Bureau.

That the presence of respondent has impaired the efficiency of the bureau, in that he did not possess the kind of qualifications which are necessary to the discharge of the duties of the office of Workmen's Compensation Commissioner; and the Governor further ordered that respondent is removed from the office of Workmen's Compensation Commissioner, and relieved of all further duties, and deprived of all the authority and of all rights, privileges, and prerogatives of such Workmen's Compensation commissioner. This substantially covers the proceedings had before the Governor at the time of the hearing on the order to show cause.

This brings us to a consideration of the first legal principle involved in the proceeding had before the Governor. At this point it should be determined whether that proceeding was a judicial or an administrative proceeding. We have not the least hesitancy in stating that it was an administrative proceeding, because the act which the Governor was doing—that is, the removal of Commissioner Wehe—was a political act, not in the interest of himself, or any individual citizen of the state, but for and on behalf of the state of North Dakota.

"The executive power shall be vested in a governor, who shall reside at the seat of government and shall hold his office for the term of two years and until his successor is elected and duly qualified. Const. § 71.

"The powers and duties of the secretary of state, auditor, treasurer, superintendent of public instruction, commissioner of insurance, commissioners of railroads, attorney general, and commissioner of agriculture and labor, shall be as prescribed by law." Const. § 83.

"The Governor and other state and judicial officers, except county judges, justices of the peace, and police magistrates, shall be liable to impeachment for habitual drunkenness, crimes, corrupt conduct, or malfeasance or misdemeanor in office, but judgment in such cases shall not extend further than removal from office and disqualification to hold any office of trust or profit under the state. The person ac-

47 N. D.—22.

cused, whether convicted or acquitted, shall nevertheless be liable to indictment, trial, judgment and punishment according to law." Const. § 196.

"All officers not liable to impeachment shall be subject to removal for misconduct, malfeasance, crime or misdemeanor in office, or for habitual drunkenness or gross incompetency in such manner as may be provided by law." Const. § 197.

Section 76 of the Constitution defines the Governor's power, in conjunction with the board of pardons, of which he is an *ex officio* member, with reference to granting pardons, remitting fines and forfeitures, etc.

Sections 121 to 131 of the Political Code, Comp. Laws 1913, define the duties of the Secretary of State. Sections 132 to 144, those of state auditor; §§ 143 to 156, those of State Treasurer; §§ 157 to 162, those of the Attorney General; §§ 163 to 171, those of Commissioner of Agriculture and Labor; §§ 172 to 175, those of the Commissioner of Insurance. This, the legislature could do, as it is in accordance with § 83 of the Constitution.

By §§ 111 to 117 of chapter 4, supra, the legislature assumed to grant certain powers and impose upon the executive certain duties, in addition to those specified in the Constitution. Section 111 of chapter 4, supra, is entitled "Powers and Duties of Governor." It provides: "In addition to those prescribed by the Constitution, the Governor has the power and must perform the duties prescribed in this and the following sections:

(1) He is to supervise the official conduct of all *executive and ministerial officers.*

(2) He is to see that all offices are filled, *and the duties thereof performed,* or in default thereof apply such remedies as the law allows. If the remedy is imperfect, acquaint the legislative assembly therewith at its next session.

(3) He is to make appointments and fill vacancies as required by law.

(10) He must issue patents for land as prescribed by the provisions of this Code.

(11) He must discharge the duties of a member of the following State Boards: Equalization; University and School Lands; Trustees of Public Property; State Historical Society; State Auditing Board;

State Banking Board; State Board of Pardons; High School Board; Trustees of the Normal Schools."

It will be observed that the Constitution nowhere authorized the legislature to prescribe the duties of the Governor. But that it does authorize it to prescribe the duties of all other state officers. See § 83, supra.

But assume that the legislature, for convenience and to facilitate the performance of the duties of the executive department, may detail the duties of the Governor, it is nevertheless certain that it cannot impose duties on him which will abridge his constitutional duties or powers, or those requiring the exercise of his political discretion, or which impair the prerogatives of the branch of government of which he is the head, and which is, by the Constitution, co-ordinate with the other two branches.

The legislature has made him *ex officio* member of many boards. These boards have various duties imposed upon them, of varying nature. Perhaps the duties of the board of equalization, of which he is a member *ex officio,* are of a legislative character, and his membership on other boards is perhaps a different nature.

If the Governor should determine that his membership on any of these boards was in direct conflict with his duties, as an executive of the state, the law imposing a duty upon him of being *ex officio* member of such board, in that event, would not be effective to control his executive discretion. If his membership thereon would prevent him from executing laws, or supervising the official conduct of that board, in his executive capacity, or if it prevented him from removing a member of such board for cause, upon notice given, charges made, and hearing held before him, or if it prevented him from transacting all necessary business with the officers of the government, civil or military, and thus be in direct conflict with his executive duties as governor, certainly the legislature would have no authority to require, nor the court to compel, him to violate his constitutional duties.

Where a board is a direct agency of the governor, in executing his official duties, or in exercising his political discretion, and where the control or direction of such board, by either of the other two departments of government, would, in effect, be the control of the discretion of the Governor, in a political act requiring the exercise of his dis-

cretion, then that board could not be controlled or directed by the legislative or judiciary branches any more than either of them could control or direct the discretion of the Governor, in the manner of his performance of a political act requiring the exercise of his discretion. In such case, such board is an agency of the executive, and its act would be his act.

In the case now before us, we are not concerned with the powers of the governor as a member of any board of which he is a member, *ex officio,* or otherwise. That question is not presented in this case, and we make no decision with reference thereto. What has been said along this line was for the purpose of drawing attention to the exclusive character of the powers possessed by the Governor, who represents the executive branch of the government, which is co-ordinate in character with the legislative and executive branches.

We have above stated that the proceedings instituted by the Governor to remove Mr. Wehe were administrative and political in character. This being true, the Governor had exclusive jurisdiction of the proceeding. He, therefore, had the right to prescribe and initiate the form and character of the procedure. That is, he could frame his charges in such way as appeared to him to be proper. He did frame those charges and had them personally served upon respondent three days before the time set for the hearing.

The respondent interposed a general denial to those charges, and these constituted the pleadings in the case. In the case of State ex rel. Wehe v. North Dakota Workmen's Compensation Bureau, 46 N. D. 147, 180 N. W. 49, a proceeding in mandamus just decided by this court, in an opinion written by Mr. Justice Birdzell, which referred to the character of the charges made in writing by the Governor, and served upon the respondent, the following language was used:

"As to the indefiniteness of the charges, it would seem that they were about as specific as laymen are apt to make charges in matters of this kind. If drawn by lawyers accustomed to the niceties of criminal pleading, by indictment or information, they might have been made to conform more nearly to the petitioner's motion of definiteness; but we fail to see wherein they did not charge with substantial clearness grounds which amount to legal cause for removal. . . .

"In view of the record made, there is no merit in the objection stat-

ing that the time of notice was too short. It does not appear wherein the petitioner would have been benefited by being given more time."

We may adopt that statement as disposing of the sufficiency of legal cause and specific nature of the charges, the charges there being the same as are in controversy here. We also think there is no merit in the contention that the time of notice was too short.

The language just quoted also indicates that the Governor had the right and exclusive jurisdiction to determine the character of the pleadings, as it draws a distinction between the nicety to be expected from pleadings drawn by attorneys and those drawn by laymen, such as the Governor is, so far as knowledge of pleadings and judicial process is concerned. Though he is Governor of the state, he is a layman, so far as knowledge of law and judicial procedure is concerned.

The judiciary, as we view the matter, has no right nor authority, under the Constitution, to impose its process upon the Governor in proceedings before him, or his department, nor impose their will upon him, respecting the manner of performance of his executive duties while engaged in executing a political act on behalf of the state. It cannot be successfully disputed, that the power of the Governor to appoint and remove executive and ministerial officers is a political act.

If the judiciary may impose its form of pleadings and practice and process upon the executive department represented by the Governor, and which is a co-ordinate department of the government—a subject we will discuss more fully later in the opinion—then why may it not impose its will in other matters upon the executive department? Truly, if it could in one instance, it could in the other. But we think it cannot do so in either or any event. For to concede that this might be done would be to concede the control of the political acts of the Governor by the judiciary.

We hold that the form of procedure taken by the Governor was a matter for him to determine within his executive discretion. The respondent was offered an opportunity to testify and produce any evidence that he might have to disprove the charges. He refused to be sworn. He did not produce any other evidence. He asked for no further time to produce evidence. He had ample notice of charges and full opportunity to be heard thereon. He simply challenged the jurisdiction of the Governor and the method of procedure. The Governor

ordered him to show cause why he should not be removed from office, and he not only did not, but refused to do so.

The Governor did not have to serve the affidavits upon the respondent. Neither did he have to disclose their contents. That was a matter within his executive discretion. The respondent refused to proceed only in a manner indicated by himself.

This was not a proceeding before a judicial tribunal, involving the principles of a default judgment, but one before a co-ordinate branch of the government, where the jurisdiction is determined by the Governor. His order was that the respondent be removed from his office, and this order recites all the charges contained in the notice, which respondent declined to disprove when he had an opportunity to do so, thereby conceding the truth of them, and which was further substantiated by other evidence then in the possession of the Governor of which respondent knew, but of which he did not have full knowledge of the contents.

The order made was one within the executive discretion. It was one with which neither the district court nor any other court may interfere, for the very plain reason that the courts have no jurisdiction to do so.

The next point for consideration is, whether the district court had any authority to issue the writ of certiorari. Comp. Laws 1913, § 8445, as amended by Session Laws of 1919, provides: "A writ of certiorari shall be granted by the supreme court and district courts, when inferior courts, officers, boards or tribunals have exceeded their jurisdiction and there is no appeal, nor, in the judgment in the court, any other plain, speedy and adequate remedy, and also when in the judgment of the court it is deemed necessary to prevent miscarriage of justice."

The writ of certiorari, as a general rule, may be used only when the proceeding is judicial or quasi-judicial, and the proceeding before the Governor was neither. It was purely and only an executive proceeding, and, though it may have taken on the appearance, and, to some extent, the form, of a quasi-judicial proceeding, in the preferring of charges, the issuing order to show cause, and in the opportunity for a hearing granted, yet, each act in the whole procedure was in connection with an executive proceeding, over which the Governor had

exclusive jurisdiction, as the head of a co-ordinate branch of the government.

"The bill of certiorari, or certiorari bill, is a bill in equity, prayed for by defendant, having for its object removal, by writ of certiorari, of a cause from an inferior court of equity to the court of chancery; and the ground on which such a writ is allowed is that, because of the inferior court's limited jurisdiction, or because of its wrongful assumption of jurisdiction, it cannot afford defendant complete justice." 11 C. J. p. 88.

This proceeding can never be resorted to for any other purpose than to test the jurisdiction of the inferior court. Albrecht v. Zimmerly, 23 N. D. 337, 136 N. W. 240. The appointment and removal of the commissioner of the compensation bureau, being a political act, requiring the exercise of discretion, the executive department had exclusive jurisdiction thereof. That jurisdiction was apparent on the face of the record, and the issuing of a writ of certiorari, in these circumstances, was an improvident act, and was a nullity.

It is almost an invariable rule that the writ will never lie for other than acts partaking of a judicial or quasi-judicial nature. However, in New Jersey, North Dakota, and South Dakota, the writ is not so confined. It were better that it were, for the extension of the right to officers but shows the desire of the legislature and the courts to encroach upon and arrogate to themselves the administrative functions, in addition to those respectively imposed upon them by the Constitution.

However, even though the writ has been by this court held to apply to inferior officers, as well as to inferior courts, boards, or tribunals, as in the case of State ex rel. Johnson v. Clark, 21 N. D. 517, 131 N. W. 715, it can never be held to apply to the Governor, who is the head of a co-ordinate branch of the government, to review any of his political acts performed on behalf of the state, nor control his executive discretion.

To hold that the writ of certiorari might be so applied would be directly to hold that the judicial department may control either of the other co-ordinate branches of the government, to-wit, the executive or legislative, and thus absolutely destroy the co-ordinate character of the three branches of government.

Respondent places great reliance upon the case of Ekern v. Mc-

Govern, 154 Wis. 157, 46 L.R.A.(N.S.) 810, 142 N. W. 595. We do not agree with the reasoning in that case, in so far as it maintains that the title to office may be determined in a proceeding in equity. The respondent here is not in the same position as was Ekern. The latter was in possession of the office, and the Governor having appointed another to the office, undertook to forcibly oust Ekern. Here the respondent is not in possession of the office, but was, by the order of the Governor, removed therefrom.

Thereafter, the governor appointed another in his stead as a member of the Workmen's Compensation Bureau, who received his commission, thereafter qualified and entered on the discharge of his duties, and has ever since occupied that office and discharged the duties incumbent upon him as such commissioner.

In these circumstances, the Ekern Case is rather authority against respondent's position, for, in that case, it was at least impliedly held that one out of possession could not maintain an action in equity. The court said: "An action in equity, whether instituted by one in or out of possession, to try the title, is one thing; an action by a person in possession of an office, having at least a *de facto* status, to compel an adversary to vindicate his claim by lawful methods, and to restrain him from disturbing the existing state of things in the meantime, is quite another affair. The one involves the adjudication of the title *de jure*. The other merely involves the right *de facto* and to have the claimant proceed lawfully to settle his claim of title *de jure*."

In other words, the court impliedly held that if Ekern had been out of possession, he could not have maintained the action in equity. In this sense, that case is against this respondent's position.

In an endeavor to sustain its contention, with reference to the power of the court in an equity proceeding to determine the title, or the right of office, the court said: "Should the court rest in a case of this sort,' having reached a point calling for judgment vindicating the primary right—the right to immunity from being forcibly dispossessed by illegal methods—leaving the more important question, the right to the office, undetermined? That is an important question. It has been taken largely for granted that either the court is without jurisdiction to, or, in any event, should not, try the title *de jure* in an equity action to quiet the right of possession against forcible attempts to disturb it.

Must parties in such a case, though in the court having jurisdiction to settle the whole controversy, depart with but partial relief, and none as to the ultimate matter, and come back not really in another form of action, because we really have but one, but asking another form of relief,—a part of the same form as before and, from a practical standpoint, including it?"

As we view that expression, its inherent weakness is, that the court assumed to be in possession of something which it, in fact, did not possess, that is, jurisdiction to determine the right of office in that proceeding. We do not think the principle asserted there has any real support in principle or authority. It is not only contrary to the great weight of authority, but, practically speaking, is without support. It is not supported to such an extent in this regard, that it could be called the minority rule.

That case is also against the great weight of authority, in its holding that an office, with its honor and emoluments, is property. We think the rule stated in State ex rel. Starkweather v. Superior, 90 Wis. 612, 64 N. W. 304, is the correct one, wherein it is stated: "An office is not regarded as property, or as a vested right, and the legislature which creates it may, in the absence of constitutional restrictions, undoubtedly make such a provision as the one in question here for the removal of the incumbent."

The rule above stated that an office is not regarded as property, or as a vested right, is upheld by the great weight of authority. It is practically the universal rule. It is the rule announced and adhered to by the United States Supreme Court.

The cases holding otherwise are few and are not based upon sound, legal reasoning or logic.

In the case of Butler v. Pennsylvania, 10 How. 405, 13 L. ed. 473, the Supreme Court of the United States said: "The selection of officers, who are nothing more than agents for the effectuating of such public purposes, is matter of public convenience or necessity, and so, too, *are the periods for the appointment of such agents. . . .* The promised compensation for services actually performed and accepted, during the continuance of the particular agency, may undoubtedly be claimed, both upon principles of compact and of equity, but to insist beyond this on the perpetuation of a public policy *either useless or*

*detrimental,* and upon a reward for acts neither desired nor performed, would appear to be reconcilable with neither *common justice nor common sense.* The establishment of such a principle *would arrest, necessarily, everything like progress or improvement in government.* . . . It follows, then, upon principle, that, in every perfect or competent government, there must exist a general power to enact and to repeal laws; *and to create, and change or discontinue, the agents designated for the execution of those laws. Such a power is indispensable for the preservation of the body politic and for the safety of the individuals of the community."*

This case, and the principles involved in it, were quoted with approval in the case of Crenshaw v. United States, 134 U. S. 99, 33 L. ed. 825, 10 Sup. Ct. Rep. 431. In the syllabus the principle is stated, that "an officer of the navy, appointed for a definite time or during good behavior, has no vested interest or contract right in his office, of which Congress cannot deprive him." Taylor v. Beckham, 178 U. S. 548, 44 L. ed. 1187, 20 Sup. Ct. Rep. 890, 1009; State ex rel. Jones v. Sargent, 145 Iowa, 298, 27 L.R.A.(N.S.) 719, 139 Am. St. Rep. 439, 124 N. W. 339.

Other decisions holding that an office is not property, and that the right to hold it is not a vested right, are State ex rel. Starkweather v. Superior, supra; State ex rel. Cook v. Houser, 122 Wis. 534, 619, 100 N. W. 964.

It is clear, that an office is not property, and the right to hold it is not a vested one. In these circumstances, a denial of due process of law, under the 5th and 14th Amendment, cannot be invoked.

But if the principle of due process were applicable, respondent could not complain, for, as said in the case of Pacific Live Stock Co. v. Lewis, 241 U. S. 440, 60 L. ed. 1091, 36 Sup. Ct. Rep. 637. "The essential elements of due process, are, first, notice, and second, opportunity to be heard."

"Due process does not always mean proceedings in court." Den ex dem. Murray v. Hoboken Land & Improv. Co. 18 How. 272–286, 15 L. ed. 372–378; McMillen v. Anderson, 95 U. S. 37, 24 L. ed. 335.

In the latter case, the United States Supreme Court said: "Nor does the phrase 'due process of law' mean by a judicial proceeding."

Mr. Justice Miller, speaking for the court in the case of Davidson

v. New Orleans, 96 U. S. 97, 24 L. ed. 616, in referring to the case of Den ex dem. Murray v. Hoboken Land & Improv. Co. supra, said: "A most exhaustive judicial inquiry into the meaning of the words 'due process', as found in the 5th Amendment, resulted in the unanimous decision of this court, that they do not *necessarily imply a regular proceeding in a court of justice, or after the manner of courts.*"

In the case of Atty. Gen. ex rel. Rich v. Jochim, 99 Mich. 358, 23 L.R.A. 699, 41 Am. St. Rep. 607, 58 N. W. 611, in the syllabus is stated the following principle:

"The state is not so bound by the term 'due process of law' that it is impossible for it to invest its agents with its offices without subjecting itself, so far as their removal is concerned, to the delays and uncertainties of strict judicial action, and it may, in cases of emergency, summarily remove them if permitted by the state Constitution.

"When the state Constitution invests the Governor with power to remove certain constitutional state officers for gross neglect of official duty, it is the duty of the Governor, upon discovering such neglect, to remove them after notice to them of the charges, and an opportunity to be heard, *and although his action is in a sense judicial, it is no valid objection thereto that he acts both as accuser and judge.*"

In Wilson v. North Carolina, 169 U. S. 586, 42 L. ed. 865, 18 Sup. Ct. Rep. 435, in the syllabus, the court laid down the principle, with reference to due process of law, in the removal of a state officer: "The suspension by the Governor of a railroad commissioner, under N. C. Act 1891, chap. 320, which operates only until the next general assembly determines the question, is not wanting in due process of law, and does not deny the equal protection of the laws, because the Governor refuses to produce to the officer the evidence against him, or give him an opportunity to confront his accusers and cross-examine the witnesses."

New Orleans v. New Orleans Waterworks Co. 142 U. S. 79, 35 L. ed. 943, 12 Sup. Ct. Rep. 142; Weimer v. Bunbury, 30 Mich. 201 (Cooley, J.); Ex parte Wall, 107 U. S. 265–318, 27 L. ed. 552–572, 2 Sup. Ct. Rep. 572.

As the concluding part of this opinion, it is proper to examine the three co-ordinate branches of government, and the powers and duties, so far as necessary, of the executive and judiciary, as co-ordinate de-

partments, in order to determine if, in this proceeding, the judicial arm of the government has encroached on and arrogated to itself certain duties and powers which are the exclusive prerogative of the executive department.

The sovereign power, the people, for the purpose of forming a government that would be balanced, and in order that too great a power might not be concentrated in one place, divided such powers and classified them into executive, legislative and judicial. That these powers might securely remain divided, a written Constitution was evolved and duly ratified, in the manner prescribed therefor, which largely defines the powers of each of such branches.

The duty of the legislative branch is to enact the laws, of the executive to execute the laws, of the judicial to interpret the laws. Being co-ordinate, neither branch may trespass upon the powers or duties committed by the Constitution to the other.

"The executive power of the Federal government is vested in a President, and, as far as his powers are derived from the Constitution, he is beyond the reach of any other department, except in the mode prescribed in the Constitution, *through the impeaching power.* A state's judiciary sustains the same relation to its Governor that the Federal judiciary does to the President of the United States; and as a state court, by reason of that relation, has no jurisdiction to coerce or restrain the Governor with respect to his official duties, so the Federal courts, for the same reason, have no power to interfere with the official actions of the President." 6 R. C. L. § 150; Hawkins v. Governor, 1 Ark. 570, 33 Am. Dec. 346.

The President of the United States bears relatively the same relation to the national government as the Governor to the state government. Within their respective spheres, in the discharge of executive duties, requiring discretion, or, in the refusal to exercise duties of that character, they may not be interfered with, or restrained, by either of the other departments. The only way is by the process of impeachment, or, by the people, in the exercise of their voting franchise.

Our Constitution imposes upon the executive no ministerial duties, and the legislature has no authority to impose any ministerial duties upon him, which would conflict with his political and executive duties, or interfere with his executive discretion. Neither can it impose con-

ditions and duties upon him, that would weaken his executive power and which would have a tendency to impede or prevent his enforcement of the laws, and the discharge of his executive duties, to the best interest and welfare of the state.

The appointment of officers, as agents to carry out his will and the duties of his department, is a political act, and the power to appoint includes the power to remove. If the legislature has any authority to prescribe the method of removal of executive appointees for a definite time, or has authority to prescribe that such removal shall not be made unless for cause, and directly or impliedly provides that a hearing shall be had upon that cause, that hearing must occur in the executive department, and no other department, or branch of government, has any jurisdiction in the matter.

If the legislature may impose its will upon the executive, absolutely, in the appointment or removal of executive agents or officers which are necessary to assist the executive in the discharge of his official duties, then, in effect, the power of appointing or removing officers is transferred to the legislature, and it can thus control the executive department.

Likewise, if the judicial department, where the Governor has removed an officer, or executive agent appointed by him, can reverse the action of the Governor, and require that the one removed be reinstated, and decree that the one appointed to fill the place of the one removed, has no authority and is not an executive officer, then the judicial department has assumed, and is discharging, the executive duties, and is fully controlling the executive discretion. It is exercising the power of appointing and removal of officers in the executive department.

If the judiciary may do this and similar acts, and likewise the legislature can control and direct the executive discretion, then the three departments are not co-ordinate, but that branch which is required to observe a decree or order of either of the other branches becomes subordinate.

We have, on the North American continent, three national entities. The United States, Great Britain, in its possession of the Dominion of Canada, and Mexico. They are separated from each other by national boundary lines. They are separate and distinct nations, each possessing its own governmental powers and system of laws. No one would con-

tend that any governmental powers of the United States has any force or effect in either of the others, nor that it could impose its will upon them against their consent, unless by force. To admit that it could do so, would be to destroy the national character of the others. It is in this sense that the three co-ordinate departments of our government are distinct in character and power, so that neither can impose its will upon either of the other co-ordinate branches. As soon as this may be done, the co-ordinate character of the branches must disappear, and thus would be practically destroyed the very cornerstone of republican form of government.

The imposition, by the judiciary, of its will upon the executive or legislative departments, in matters committed to those departments, by the Constitution, or by necessary implications derived therefrom, is not an act which tends to preserve a republican form of government, and our democratic ideals, but is one which tends to directly destroy them by the establishment of judicial tyranny.

We think a reading of the history of ancient republics will show that the concentration of executive, legislative, and judicial functions, in the hands of any given class of officials, was the rock upon which their ships of state were wrecked.

The same tendency to weaken the republican form of government, and to destroy its fundamental functions, is manifested in the impairment of the right of trial by jury, and by the impairment of the functions of the jury. This is, to some extent, accomplished by providing that its verdict shall be a special one, composed of many intricate and complicated questions, instead of a general one, which passes upon all the issues of the case in the ordinary manner, as was intended by the Constitution.

It is again impaired, where trial courts substitute their own judgment for that of the jury, and set aside a verdict when there is some substantial evidence to support it. It is impaired where any court minimizes the effect of the verdict of the jury. It is impaired, when the press, or the bar, or the court, dwell on and magnify the alleged prejudice and ignorance of the ordinary jury.

Democracy is weakened where the will of the majority, duly and lawfully expressed by law, and in pursuance of law, with reference to any matter which is properly presented to them for their decision, and

which is by them lawfully decided, and the minority refuse to be bound thereby, and insist that the will of the minority must be supreme, and that the majority must submit thereto.

The executive and legislative branches of the government, while engaged in the performance of the duties imposed upon them by the Constitution, and in exercising the powers conferred upon them, cannot be restrained or coerced by the judicial department.

Both branches of our legislature might introduce a bill which would be clearly unconstitutional, but the judiciary cannot intervene to restrain them from doing this. They may pass it and present it to the Governor, and he may sign it, yet the court may not restrain the Governor from that. The judiciary may not interfere with the law until the time when it becomes effective, and when it is presented in a court of competent jurisdiction, and the constitutionality of the law is drawn in question, by reason of the impairment of some property or personal right; but, when that time arrives, the law is then before the judicial branch of government, in its co-ordinate capacity, and then, neither the executive nor the legislative can interfere in any manner to prevent a judicial tribunal from declaring the unconstitutionality of the law.

Though our Constitution says that a member of the House of Representatives should be twenty-one years of age, if one were elected who was only eighteen years of age, he could qualify and enter upon the discharge of his duties, and the judicial department could not restrain him, though, under the Constitution, he is clearly disqualified to fill the office. For, by the terms of the Constitution, each house is the judge of the election and qualification of its own members.

Each house is required to keep a journal of its proceedings, and the yeas and nays on any question shall be taken and entered, at the request of one sixth of those present, and if either house refuse to keep a journal, or refuse to take and enter the yeas and nays, in the manner above specified, the judicial branch of government could not certainly, by mandamus, compel them to do so. But if the constitutionality of the law is challenged before a judicial tribunal, on the ground that the proceedings, in reference to its passage, was not placed upon the journal in either house, or upon its final passage, that the voting was not taken by yeas and nays, and the names of those voted entered on the journal, it could then be declared unconstitutional. If the Governor refuse to

perform his executive duties, he cannot be coerced by the judiciary. Neither can his executive discretion be restrained nor compelled by it. The remedy, so far as he is concerned, is by impeachment and the power of the people at election.

The Constitution prescribes the penalties which may be imposed upon members of the legislature for misconduct, and, aside from this, they are answerable to the people at election periods.

It is the duty of the executive of this state, under the Constitution, to enforce the laws. In order to do this, the assistance and service of subordinate officers and agents must be used. Now it is not difficult to discern that, if such subordinate officers and agents may resist the power of the Governor; if they may perform their duties in an unsatisfactory and inefficient manner; and if the Governor has not, within himself and his department, the power to remove them from office, or from their positions, after serving notice of the charges upon them, and giving a reasonable notice to be heard; and if he must wait until the determination of the judicial tribunals, as to his power and right to remove such an officer, in these circumstances; and if he can be compelled by such tribunals to retain, in the service of the state, a subordinate officer who he believes is incompetent, inefficient, and a detriment to public service, then the executive is not a co-ordinate branch of the government. Then, is he not an executive, and neither does he possess the power to enforce the law.

Those holding subordinate positions or offices in that department, or under the control or direction of that department, will feel perfectly free to use their own judgment and discretion in their official acts, and disregard the commands and directions of the supreme executive of the state, in whom the Constitution has reposed full and complete executive authority, and who is charged, by the Constitution, directly with the enforcement of all laws.

This case involves not only the power of the Governor to remove the respondent, but, involves the welfare, peace, and dignity of the state. The Governor cannot enforce the law, and thereby protect life and property, unless he can provide competent subordinate officers and agents, nor unless he can remove from office or service those who his executive discretion and judgment declares to be incompetent and inefficient.

Under the power vested in him by the Constitution, and in pursuance

of § 4 of the law above mentioned, and in the manner above described, after proceedings had, the Governor did enter his order removing the respondent. In making and entering this order, he exercised his executive judgment and discretion, in the performance of an act which was purely political in character, and, with his order, no court has any right or jurisdiction to interfere. Parsons v. United States, 167 U. S. 325, 42 L. ed. 185, 17 Sup. Ct. Rep. 880; Keyes v. United States, 109 U. S. 336–340, 27 L. ed. 954–956, 3 Sup. Ct. Rep. 202; Blake v. United States, 103 U. S. 227–237, 26 L. ed. 462–465; People ex rel. Sutherland v. Governor, 29 Mich. 320; State v. Borstad, 27 N. D. 533, 147 N. W. 380, Ann. Cas. 1916B, 1014, and cases cited; State ex rel. Shaw v. Frazier, 39 N. D. 430, 167 N. W. 510, and cases cited.

The respondent cites the case of State ex rel. Poole v. Peake, 22 N. D. 457, 40 L.R.A.(N.S.) 354, 135 N. W. 197. It is not necessary to enter into a discussion of the peculiarities of that case, further than to remark that even if the Governor did not have authority, under the law, to convene a court-martial, and if there were no law providing for the convening of the court-martial, in times of peace, the Governor was, according to the provisions of § 75 of the Constitution, commander in chief of the military and naval forces of the state, except when they are called into the service of the United States, and he may at any time call out the militia to execute the law, suppress insurrection or repel invasion.

He might, therefore, in the absence of a law providing for court-martial in times of peace, have simply discharged the relator, which would have been an executive act, with which the courts could not have interfered.

So far as that case may be regarded as authority for the principle, that the judiciary has a right to interfere with the executive department, and to assert its jurisdiction over it, or over the executive discretion of the Governor, in the execution of his duties, it should be overruled.

It will not be amiss to consider in which branch of the government the appointive power is lodged. The Constitution has not, in specific terms, placed it with either branch. Where it actually is lodged must be determined from implications to be drawn from the Constitution,

and by the construction placed upon that implication by the three branches of government.

The Constitution does vest in the Governor, under § 71 of the Constitution, the executive authority of the state; that is, the power and duty to enforce the laws.

It is manifest, that the Governor cannot, acting alone, carry out that mandate of the Constitution. He must have agents, and the power of appointing certain officers to assist him in the execution of his duties; and in this discussion we are dealing only with such agents and appointive officers, and do not undertake to discuss the removal of officers, who are elected by the people, in their sovereign capacity; and in this connection it is well to consider that the sovereign power, formerly possessed by the King, is now possessed by the people as a whole; and it is also to be observed that, in the creation of the state, the people did not part with one jot or tittle of that sovereign power. They retained it all. What they did do was to delegate certain governmental powers only, to the three co-ordinate branches of government.

They also defined and limited those powers by a written Constitution, which specifically sets forth, in direct words or by implication, the actual powers delegated to each branch, and the duties imposed upon them. So that to say that all the governmental power that is not delegated to the executive or judicial branches is lodged with the legislative branch is a fallacy; and such a principle is absolutely contrary to the provisions and the fundamental principles of the Constitution.

The true rule is, that each branch has such powers and duties as are specifically delegated to it, or that it must be held to possess, by reason of necessary implications naturally flowing from or derived from the Constitution.

The implication is natural and conclusive that, if the executive must enforce the law, he must control the appointment and removal of such agents and subordinate, appointive officers as are necessary to assist him. If he possess not this power, he cannot enforce the law, and if the other branches of government may tell him what officers he may appoint and in what manner, and when he may remove them, then those branches of government are controlling the executive branch, and it is subordinate and subject to their will. For the legislature to provide that an officer appointed by the Governor should be removed only for cause, is not a

claim by the legislature of a right to remove officers, neither does such a provision confer any power or right on the court to do so, but, on the contrary, it is a recognition of the sole authority of the Governor in that regard.

But let it be clearly understood that it is not the view of the writer that the legislature has ever usurped the power, or claimed the right, to appoint officers to assist the executive in the enforcement of law, but that, on the other hand, in practically all legislative action, in the creation of governmental boards, commissions, etc., to carry into operation any given governmental power, it has uniformly recognized and construed the power to appoint officers and to remove them to be in the executive department.

We might recite, by name, all such various boards and commissions, such as, Board of Control, Boards of Health, Vital Statistics, State Board of Dental Examiners, Practice of Osteopathy, State Board of Examiners in Optometry, State Board of Embalmers, and Board of Accountancy, and very many others.

The Constitution in several provisions recognizes that the power of appointment is in the executive department. Those provisions are as follows: Sections 71, 78, 81 and 98, and section 76, as amended. As we have above stated, the power to appoint implies and includes the power to remove.

The power of the executive to appoint subordinate officers and agents to execute the laws is, we believe, an inherent power, conferred upon him by § 71 of the Constitution, and the natural and necessary implications emanating from that section; that is, he has the inherent power to appoint all subordinate officers and agents, which necessarily act in the branch of government of which he is the executive head.

It does not follow from this that he may appoint subordinate officers, or officers or agents, in the legislative and judicial branches. For instance, if the Governor has inherent power to appoint all the officers and agents necessary to the enforcement of law, it does not necessarily follow that he has authority to appoint officers in the other branches of government, nor power to fill vacancies occurring in official positions in those branches.

That the Governor may not have power to fill a vacancy occurring in a judicial office is shown by § 98 of the Constitution, where, in the event

a vacancy in the supreme court is caused by the death, resignation, or otherwise, of a judge of that court, the Governor has power to fill the appointment until the next general election.

So that § 98 rather confirms the principle that the Governor has no inherent power to appoint judicial officers, and it also, we believe, recognizes the principle, that the power of the Governor to appoint subordinate officers and agents to enforce the laws, is an inherent power under the Constitution, and that § 98 is a limitation on that power; and we believe that § 78 likewise is a limitation upon the inherent power of appointment; that is, the Governor may have inherent power to appoint and remove subordinate officers and agents necessary to execute the laws, but he might not have power to fill every kind of vacancy. But, if it be conceded he has the inherent power to fill a vacancy which relates only to subordinate officers and agents acting under the executive department, it does not follow that he would have power to appoint officers to fill vacancies occurring in judicial or legislative offices, unless that authority is specially conferred upon him.

There may be many offices of a quasi-judicial or legislative nature, which might become vacant, and which the Governor, under his inherent power, might not have authority to fill, except for the provisions of § 78 of the Constitution, and, we believe, this section must be construed as a limitation on his otherwise inherent power to appoint subordinate officers and agents necessary to the proper conduct of the executive department and the enforcement of the laws.

The absolute right to appoint and remove subordinate officers or agents of the executive department was, by the Constitution, unquestionably deposited with one of the three branches of the government. The power to appoint and remove was not, so to speak, suspended in the air. If the majority of the court assert that that power is in the legislature only, or in the legislature and the courts combined, then they should go further and point out what provision of the Constitution these respective branches of the government derive that power.

If they should undertake to do so, we are fully satisfied they would fail, for, as we view the matter, there is no provision in the Constitution delegating such power to any branch of the government, excepting § 71, which unmistakably deposits that power with the executive branch of the government, as represented by the Governor of the state.

In closing this opinion, which has grown quite in length, owing to the importance of the principles involved, we can do no better service toward sustaining the principles which underlie every republican form of government, than to quote the language of the Arkansas court, in the case of Hawkins v. Governor, 1 Ark. 570, 33 Am. Dec. 346, supra, the able opinion in which was written by Judge Lacey. He there said: "There can be no liberty, says Montesquieu, where the legislative and executive powers are united in the same person or body of magistracy; or if power of judging be not separate from the legislative and executive powers. This is a political axiom established by the deliberate judgment of centuries, and confirmed by the universal experience of mankind. The American Constitutions have therefore made those departments as independent, and as separate from each other, as the nature of the case would admit of, or as their necessary connection or bond of union would allow. Each department is made sovereign and supreme within its own sphere, and is left in the full and free exercise of all the powers and rights respectively belonging to it. Each is a co-ordinate and equal branch of the government, and they all represent the sovereign will of the people, as embodied in the Constitution. The Constitution makes and ordains them all, and appoints each department to guard the sacred and invaluable rights established by that instrument. The Constitution is then above all the departments of the government; for it creates and preserves them. The will of the people must be greater than that of their agents, or there can be no constitutional liberty or independence. All the departments of the government unquestionably have the right of judging of the *Constitution and interpreting it for themselves*. But they judge under the responsibilities *imposed in that instrument, and are answerable in the manner pointed out by it*. The duties of each department are such as belong peculiarly to it, and the boundaries between their respective powers or jurisdictions are explicitly marked out and defined. For any one department to assume powers or exercise a jurisdiction properly belonging to another department, is a gross and palpable violation of its own constitutional duty.

The legislature, then, can exercise no power which properly belongs to the judiciary, or the judiciary any power that rightly belongs to the executive."